# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| PEDRO SOTO MELENDEZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BANCO POPULAR DE PUERTO RICO,<br><br>Defendant. | Civil Action No. 20-1057<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Pedro Soto Melendez, on behalf of himself and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding Plaintiff and on information and belief as to other allegations.

## INTRODUCTION

1. Plaintiff brings this action on behalf of himself and classes of all similarly situated consumers against Defendant Banco Popular de Puerto Rico ("BPPR" or "Bank") arising from the Bank's routine practice of (a) assessing more than one insufficient funds fee ("NSF Fee") on the same item and charging *both* NSF Fees and overdraft fees ("OD Fees") on the same item.

2. These practices breach contractual promises; violate the covenant of good faith and fair dealing; and/or result in the Bank being unjustly enriched.

3. BPPR's customers have been injured by the Bank's improper practices to the tune of millions of dollars bilked from their accounts in violation of their agreements with BPPR.

4. On behalf of himself and the Classes, Plaintiff seeks damages, restitution, and injunctive relief for Defendant's violations as set forth more fully below.

## PARTIES

5. Pedro Soto Melendez is a resident of Las Piedras, Puerto Rico, and holds a BPPR checking account.

6. Defendant BPPR Bank is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Classes. BPPR has its headquarters in San Juan, PR. BPPR has approximately $44.3 billion in assets and provides banking services to customers through bank branches in Puerto Rico, the US Virgin Islands, New York, New Jersey, Florida, and elsewhere.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed classes are comprised of at least 100 members; (2) proposed class members reside in at least eight states, meaning at least one member of the proposed classes resides outside of Puerto Rico; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because BPPR is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

**I. BPPR CHARGES MORE THAN ONE NSF FEE ON THE SAME ITEM AND CHARGES BOTH NSF FEES AND OD FEES ON THE SAME ITEM**

9. As alleged more fully herein, BPPR's Account Documents allow it to charge a *single* $15 NSF Fee or a *single* $15 OD Fee when an item, including an electronic payment item, is returned for insufficient funds or paid into insufficient funds.

10. BPPR breaches its contract when it charges more than one $15 NSF Fee on the same item, since the contract explicitly states—and reasonable consumers understand—that the same item can only incur a single NSF or OD Fee.

11. The Bank similarly breaches its contract when it charges both a $15 NSF Fee (or multiple NSF Fees) and a $15 OD Fee on the same item since the contract explicitly states—and reasonable consumers like Mr. Melendez understand—that the same item cannot incur both types of fees.

12. This abusive practice is not universal in the financial services industry. Indeed, major banks like JP Morgan Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one NSF Fee on the same item when it is reprocessed. Instead, Chase charges one NSF Fee even if an item is resubmitted for payment multiple times.[1]

13. BPPR's Account Documents never disclose this practice. To the contrary, the Deposit Agreement indicates it will only charge a single NSF Fee or OD Fee on an item.

---

[1] As indicated by Chase's printed disclosures, an "item" maintains its integrity even if multiple processes are effected on it: "If we return the same item multiple times, we will only charge you one Returned Item Fee for that item within a 30-day period."

    **A.    Plaintiff Melendez's Experience.**

14. In support of his claims, Plaintiff offers an example of fees that should not have been assessed against his checking account. As alleged below, BPPR: (a) reprocessed a previously declined item two times; and (b) charged an additional fee upon each reprocessing, for a total assessment of *$45 in fees on the same item*.

15. On February 4, 2019, Plaintiff attempted an ACH payment to American Express.

16. BPPR rejected payment of that item due to insufficient funds in Plaintiff's account and charged him a $15 NSF Fee for doing so. Plaintiff does not dispute the initial fee, as it is allowed by BPPR's Deposit Agreement.

17. Unbeknownst to Plaintiff, and without his request to BPPR to reprocess the item, however, two days later, on February 6, 2019, BPPR processed the same item again, coded it as a RETRY PAYMENT on Mr. Melendez' bank statement, and again rejected the item for insufficient funds, and again charged Plaintiff a $15 NSF Fee for doing so.

18. Unbeknownst to Plaintiff, and without his request to BPPR to reprocess the item, however, another two days later, on February 8, 2019, BPPR processed the same item yet again, coded it again as a RETRY PAYMENT and yet again rejected the item for insufficient funds, and again charged Plaintiff a $15 NSF Fee for doing so.

19. *In sum, BPPR assessed Plaintiff $45 in fees on a single payment he attempted to make to American Express.*

20. Plaintiff understood the payment to be a single item as is laid out in BPPR's contract, capable at most of receiving a single NSF Fee (if BPPR returned it) or a single OD Fee (if BPPR paid it).

21. BPPR itself also understood the reprocessing attempts were for the same payment and a single item, and its systems categorized them as such. Indeed, on Plaintiff's bank statement, BPPR described subsequent attempts to debit the item as "RETRY PAYMENT."

**B. The Imposition of Multiple NSF Fees on a Single Transaction Violates BPPR's Express Promises and Representations.**

22. BPPR's Account Documents repeatedly discuss OD and NSF Fees together as "Overdraft Fees" and repeatedly state that the Bank will assess a single Overdraft Fee of *$15 per item* that is returned due to insufficient funds or paid into insufficient funds.

23. In to the "Characteristics and Fees" document ("Fee Schedule"), BPPR makes clear that only one Overdraft Fee (defined by BPPR to include both overdraft and NSF fees) will be assessed per "electronic transaction" or "check":

> Electronic Transaction (Pay by Phone and / or Electronic Debit) and / or paid or returned check......$15.00.......The Bank may, at its discretion, pay these transactions without requiring your authorization. Per overdraft. Will be charged if the Bank pays or returns an electronic transaction (Pay by Phone and / or Electronic Debit) and / or pay or return a check against insufficient funds or non-available funds.

Fee Schedule (Ex. A hereto) (emphasis added).

24. The same "electronic transaction" or "check" on an account cannot conceivably become a new item each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit the item.

25. There is zero indication anywhere in the Account Documents that the same item is eligible to incur multiple NSF Fees. Indeed, the BPPR Account Agreement expressly states that "only one determination of availability of funds" will be made for any "item":

> The Bank shall determine if an Account has available funds to honor an item at any time from the time of receipt of such item until the cut-off time established by the Bank to return the item. Only one determination of availability of funds will be made by the Bank. If upon such determination it appears that funds in the Account are insufficient to pay the item, the Bank is under no obligation to pay the item and may return it. The Bank is not required to send a notice prior to returning items for insufficient funds.

5

Deposit Agreement, Ex. B.

26.     Even if BPPR reprocesses an instruction for payment or a check, it is still the same item.  The Bank's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

27.     As alleged herein, Plaintiff took only a single action to make a single payment; he may therefore be charged only a single fee.

28.     Moreover, by expressly linking OD Fees and NSF fees in the disclosure, BPPR bolsters the reasonable expectation that only a single fee can be assessed on an item.  Here's why:  For an item charged an "overdraft fee" and thus paid into overdraft, there is no chance it can be subject to reprocessing and thus no chance it could be subject to a second or third fee, since it has already been paid.  No reasonable contract reading could allow the *other* fee mentioned in the disclosure—the NSF Fee—to be treated so differently and assessed two or three times on the same item.

29.     The disclosures described above never discuss a circumstance where BPPR may assess multiple NSF or OD Fees for an item that was returned for insufficient funds and later reprocessed one or more times and returned again.

30.     In sum, BPPR promises that one $15 NSF Fee or one $15 OD Fee will be assessed per item, "electronic transaction" or "check," and this must mean all iterations of the same instruction for payment.  As such, BPPR breached the contract when it charged more than one fee per item.

31.     Reasonable consumers understand any given authorization for payment to be one, singular item, as that term is used in BPPR's Deposit Agreement.

32. Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which the Bank will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does BPPR disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do BPPR customers ever agree to such fees.

33. Customers reasonably understand, based on the language of the Account Documents, that the Bank's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional NSF or OD Fees. In other words, it is always the same item.

34. Banks like BPPR that employ this abusive multiple fee practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Defendant here never did.

35. For example, First Hawaiian Bank engages in the same abusive practices as Defendant, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

(emphasis added).

36. Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does

7

not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.

37. Central Pacific Bank, a leading bank in Hawai'i, states in its Fee Schedule under the "MULTIPLE NSF FEES" subsection: "Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds.

38. BP Credit Union likewise states: "Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item."

39. BPPR provides no such disclosure, and in so doing, deceives its accountholders.

**C. The Imposition of Multiple NSF Fees or OD Fees on a Single Transaction Breaches BPPR's Duty of Good Faith and Fair Dealing.**

40. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that the Bank is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the Bank has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited

from exercising its discretion to pile on ever greater penalties. Here—in the adhesion agreements BPPR foisted on Plaintiff and its other customers—BPPR has provided itself numerous discretionary powers affecting customers' credit union accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, the Bank abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

41. BPPR exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it defines "item" in a way that directly leads to more NSF and OD Fees. Further, BPPR abuses the power it has over customers and their bank accounts and acts contrary to their reasonable expectations under the Deposit Agreement. This is a breach of the Bank's implied covenant to engage in fair dealing and act in good faith.

42. BPPR also abuses discretion under the contract to engage in a reject-then-pay pattern of first rejecting—and charging an NSF fee on—an item and then, days later, paying that same item and charging an OD fee, despite the customer being in the same (insufficient funds) financial situation.

43. By so acting to maximize fee assessments, BPPR fails to exercise its power fairly and in good faith. Indeed, had BPPR paid the item into overdraft on the first processing attempt (as it in fact chose to do on the second processing attempt) it would have charged Plaintiff a single OD Fee. Instead, BPPR first rejected the item so that it could charge an NSF Fee; then, only upon resubmission, it paid the same item and charged Plaintiff an OD Fee. The extra step served no purpose except to increase BPPR's fee revenue, and was an abuse of the discretionary powers it granted to itself under the contract.

44. By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging more than one NSF Fee or OD Fee on a single item, BPPR breaches the reasonable expectation of Plaintiff and other customers and in doing so violates the implied covenant to act in good faith.

45. It was bad faith and totally outside Plaintiff's reasonable expectations for BPPR to use its discretion to assess two or three NSF Fees for a single attempted payment.

## CLASS ACTION ALLEGATIONS

46. Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated pursuant to Federal Rule 23. The Classes include:

> All persons who, within the applicable statute of limitations period, were charged multiple NSF Fees for the same debit item in a BPPR checking account (the "NSF Class").
>
> All persons who, within the applicable statute of limitations period, were charged an NSF Fee and an OD Fee for the same item in a BPPR checking account (the "NSF/OD Class").

47. Excluded from the Classes are Defendant, Defendant's subsidiaries and affiliates, their officers, directors, and the members of their immediate families, and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

48. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or to add subclasses if necessary before this Court determines whether certification is appropriate.

49. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions

predominate over questions that may affect only individual class members because BPPR has acted on grounds generally applicable to the Classes. Such common legal or factual questions include, but are not limited to:

- a) Whether BPPR improperly charged NSF and OD Fees;
- b) Whether any of the conduct enumerated above violates the contract;
- c) Whether any of the conduct enumerated above violates the covenant of good faith and fair dealing;
- d) Whether any of the conduct enumerated above constitutes unjust enrichment;
- e) The appropriate measure of damages.

50. The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identities of whom are within the exclusive knowledge of and can be ascertained only by resort to BPPR's records. BPPR has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

51. It is impracticable to bring members' of the Classes individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

52. Plaintiff's claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices by BPPR, as described herein.

53. Plaintiff is more than an adequate representative of the Classes in that Plaintiff has a BPPR checking account and has suffered damages as a result of BPPR's contract violations, BPPR's violations of the covenant of good faith and fair dealing, and BPPR's unjust enrichment. In addition:

   a) Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

   b) There is no conflict of interest between Plaintiff and the unnamed members of the Classes;

   c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

   d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

54. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

55. BPPR has acted or refused to act on grounds generally applicable to each of the classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each of the Classes as a whole.

56. All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (On Behalf of Plaintiff and the Classes)

57. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Petition as if fully set forth herein.

58. Plaintiff and BPPR contracted for checking account services, as embodied in the Deposit Agreement and Fee Schedule.

59. BPPR breached the terms of the contract.

60. Plaintiff and members of the putative Classes have performed all of the obligations on them pursuant to the Bank's agreements.

61. Plaintiff and members of the putative Classes have sustained monetary damages as a result of each of Defendant's breaches.

## COUNT II
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (On Behalf of Plaintiff and the Classes)

62. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1-56 of this Petition as if fully set forth herein.

63. Plaintiff and BPPR contracted for checking account services, as embodied in the Deposit Agreement and Fee Schedule.

64. Puerto Rico mandates that an implied covenant of good faith and fair dealing govern every contract. For banking transactions, this is also mandated by the Uniform Commercial Code that has been adopted in each state. The covenant of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers.

65. This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

66. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the

spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

67. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

68. BPPR breached the covenant of good faith and fair dealing as explained herein.

69. Each of Defendant's actions was done in bad faith and was arbitrary and capricious.

70. Plaintiff and members of the putative Classes have performed all of the obligations imposed on them pursuant to the Deposit Agreement.

71. Plaintiff and members of the putative Classes have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

## COUNT III
## UNJUST ENRICHMENT
### (In the Alternative to COUNT I and COUNT II)
### (On Behalf of Plaintiff and the Classes)

72. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1-56 of this Petition as if fully set forth herein.

73. This Count is brought solely in the alternative. Plaintiff acknowledges that his breach of contract claim cannot be tried along with unjust enrichment.

74. To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

75. Plaintiff and the Classes conferred a benefit on Defendant when they paid Defendant the fees that were not disclosed or allowed for in the in the Deposit Agreement.

76. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

77. Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A. Certifying the proposed Classes pursuant to Federal Rule of Civil Procedure 23, appointing the Plaintiff as representative of the Classes, and appointing counsel for Plaintiff as lead counsel for the respective Classes;

B. Declaring that Defendant's policies and practices as described herein constitute a breach of contract and a breach of the covenant of good faith and fair dealing or unjust enrichment;

C. Enjoining Defendant from the wrongful conduct as described herein;

D. Awarding restitution of all fees at issue paid to Defendant by Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

E. Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

F. Awarding actual and/or compensatory damages in an amount according to proof;

G. Awarding pre-judgment interest at the maximum rate permitted by applicable law;

H.     Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

I.     Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: January 31, 2020.

Respectfully submitted,

BY:

Jeffrey Kaliel*
KALIEL PLLC
1875 Connecticut Avenue NW
10th Floor
Washington, DC 20009
(202) 150-4783
jkaliel@kalielpllc.com

**EDELSBERG LAW, PA**
Scott Edelsberg*
Florida Bar No. 0100537
scott@edelsberglaw.com
19495 Biscayne Blvd #607
Aventura, FL 33180
Telephone: 305-975-3320

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis*
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 400
Miami, FL 33132
Telephone: 305-479-2299
Fax: 786-623-0915

                      **INDIANO & WILLIAMS, P.S.C.**
207 del Parque Street, Third Floor
San Juan, Puerto Rico 00912
Tel: (787) 641-4545; Fax: (787) 641-4544
david.indiano@indianowilliams.com

*s/ David C. Indiano*
**DAVID C. INDIANO**
USDC PR Bar No. 200601

*Attorneys for Plaintiff*

\* *Pro hac vice* application to be promptly filed