| | |
|---|---|
| PEDRO SOTO MELENDEZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BANCO POPULAR DE PUERTO RICO,<br><br>Defendant. | Civil Action No. 20-1057 (JAG)<br><br>*(Lead Case for Settlement Approval Purposes, No. 20-01057-JAG)*<br><br><br>**JURY TRIAL DEMANDED** |
| SANDRA ORAMA CARABALLO and MIGUEL QUINONES ACOSTA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BANCO POPULAR DE PUERTO RICO,<br><br>Defendant. | Civil Action No. 22-1107<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

**NOTICE OF MOTION AND MOTION FOR: (1) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; AND (2) CONDITIONAL CERTIFICATION OF SETTLEMENTCLASS FOR SETTLEMENT APPROVAL PURPOSES**

**NOW APPEAR** the Plaintiffs to these actions and hereby respectfully request the relief as set forth below:

## I.    INTRODUCTION

Plaintiffs Pedro Soto Meléndez, Sandra Janine Orama Caraballo, and Miguel Quiñones, on their own behalf and on behalf of the Settlement Class they represent in the actions styled *Soto v. Banco Popular de Puerto Rico*, No. 3:20-cv-01057 (D.P.R.) (the "Soto Action") and *Orama*

*Caraballo et al.* v. *Banco Popular de Puerto Rico*, No. 3:22-cv-01107 (D.P.R.) (the "Orama Action") (hereinafter, referred to jointly as the "Actions"),, submit this brief in support of their motion for: (i) preliminary approval of class action settlement; and (ii) conditional certification of the Settlement Class on the terms set forth in the Settlement Agreement and Releases (the "Settlement Agreement" or "Settlement"), attached hereto as Exhibit A.[1]

As a result of arm's arms-length negotiation, including in-person mediation with the aid of the Hon. José Fusté (Ret.) on April 5, 2022, in San Juan, Puerto Rico, the parties in the Actions reached a proposed Settlement. The Court should grant Preliminary Approval because the Settlement provides substantial relief for the Settlement Class and the terms of the Settlement are well within the range of reasonableness and consistent with applicable case law. Indeed, given the significant risks inherent in these Actions, the $5.5 million Settlement Fund alone is an excellent result for the Settlement Class. But that is not all. Perhaps more importantly, Banco Popular de Puerto Rico ("BPPR" or the "Bank") has agreed to cease—for a period of at least five years—the "retry" fee assessment practice at the heart of this case. This prospective relief will, Class Counsel estimates, save the Settlement Class and BPPR accountholders approximately $9 million over the next five years. Declaration of Jeffrey Kaliel ("Kaliel Decl."), attached hereto as Ex. B, at 4. Lastly, the Bank is updating its checking account documents to provide additional clarity with respect to overdraft fees and insufficient funds fees—another benefit that will accrue to the Settlement Class. This package of benefits is a terrific recovery for the Settlement Class.

The Settlement satisfies all First Circuit Court of Appeals criteria for settlement approval. One keystone of this Settlement is that all Settlement Class Members will receive their pro rata share of the Net Settlement Fund without having to complete any claims forms, and Settlement

---

[1] On July 26, 2022, this Honorable Court granted the Parties' joint request to consolidate the Actions into the Soto Action for settlement approval purposes. See Docket No. 103 in lead case Civil No. 20-1057 (JAG).

Class Members will <u>not</u> be asked to prove they were damaged by practices alleged in the Actions. Instead, available information of the relevant fees assessed to each Settlement Class Member during the Class Period will be used to calculate each Settlement Class Member's distribution. Thus, the plan of allocation fairly and adequately accounts for the value of each Settlement Class Member's individual claim. In the face of certain risks discussed below, this Settlement is fair and reasonable and merits Preliminary Approval.

Consensual resolution of disputes of this nature has long been preferred, as the interested parties are in the best position to weigh the risks and benefits. To this end, judicial review of class settlements has been characterized as limited to determining whether the settlement is the product of fraud, overreaching or collusion and is, on the whole, fair adequate and reasonable to all concerned. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "A proposed settlement of a class action may be given preliminary approval 'where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval.'" *Trombley v. Bank of Am. Corp.*, No. 08-CV-456-JD, 2011 WL 3273930, at *5 (D.R.I. July 29, 2011) (quoting *Passafiume v. NRA Group, LLC*, 274 F.R.D. 424, 2010 WL 6641072, at *5 (E.D.N.Y. Nov. 30, 2010)) (internal quotation marks omitted); *see also In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D.P.R.2010). The settlement proposed here should be approved, as it more than meets this standard.

## II. BACKGROUND

### A. <u>Procedural History</u>

Plaintiff Soto filed a putative class action Complaint in the Soto Action on January 31, 2020, alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing and/or unjust enrichment, on his behalf and on behalf of persons similarly situated. The claims are based on BPPR's standardized checking account agreement drafted by BPPR. Plaintiff Soto alleged that in breach of certain contractual promises in BPPR's checking account agreement, BPPR assessed more than one non-sufficient funds ("NSF") fee or both NSF and overdraft ("OD") fees on the same "item" resubmitted for payment in connection with an ACH transaction.

BPPR moved to dismiss the complaint on April 10, 2020. The Court denied the Motion to Dismiss in part on March 31, 2021. BPPR moved for partial reconsideration of that order, and the Court denied that motion on March 7, 2022.

Plaintiff Soto served extensive written discovery after the motion to dismiss was first denied. Discovery was ongoing at the time the Parties agreed to a mediation in this case. BPPR produced, on a confidential basis and subject to the Stipulated Confidentiality Order issued at Docket No. 88 in the Soto Action, documents and a large quantity of transactional data regarding NSF and OD fees, which Plaintiff's expert analyzed, as well as other documents and data.

Plaintiff Soto took a Rule 30(b)(6) corporate representative deposition and several more depositions were expected at the time of the mediation.

Plaintiffs Orama and Quiñones filed a separate complaint on March 2, 2022 in the District of Puerto Rico, also alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and/or unjust enrichment. Like Plaintiff Soto's complaint, Orama's and Quiñones' claims are based on BPPR's standardized checking account agreement drafted by

BPPR. Plaintiffs alleged that, in breach of certain contractual promises in BPPR's checking account agreement, BPPR assessed more than one NSF fee or both a NSF and an OD fee on "items" resubmitted for payment in connection with an ACH and/or a paper check transaction.

Prior to beginning settlement discussions, Plaintiff's expert undertook an extensive analysis of the transactional data produced by BPPR, in order to determine the estimated alleged damages at issue in this case. Only then, on April 5, 2022, did the Parties participate in a full-day mediation session with Hon. José Fusté (Ret.), in San Juan, Puerto Rico. The Parties reached an agreement in principle and signed a Term Sheet that day.

On April 28, 2022, the Parties filed a Notice of Settlement, confirming their agreement in principle and requesting that the Court stay all deadlines in the Actions. Since that time, the Parties have worked to document and execute a full Settlement Agreement, select a Settlement Administrator, and draft Class Notices.

### B. Class Counsel's Investigation

Class Counsel spent many hours investigating the claims of several potential plaintiffs against BPPR. Kaliel Decl., at ¶ 5. Class Counsel interviewed a number of BPPR customers to gather information about BPPR's disclosures and practices and their potential impact upon consumers, which was essential to counsel's ability to understand the nature of the potential claims and issues, the language of the account agreement and other documents at issue, and potential remedies. *Id*. at ¶ 6. Class Counsel expended significant resources researching and developing the legal claims at issue. *Id*. at ¶ 7. They are familiar with the claims as they have litigated and resolved other bank fee claims with similar factual and legal issues in courts across the country. Class Counsel has experience in understanding the damages at issue, the information critical to determine class membership, and the necessary data to calculate each Settlement Class Member's

damages. The issues were heavily contested throughout the litigation. *Id*. at ¶ 8. Class Counsel, along with its data analysis expert, spent a significant amount of time analyzing data related to the assessment of the Class Fees at issue. *Id*. at ¶ 9. The Parties conferred regarding the calculations' accuracy. *Id*., ¶ 10. Prior to the mediation, Class Counsel and Plaintiff's expert used this data to analyze the alleged damages at issue. *Id*., ¶ 11.

Consequently, Class Counsel mediated with Judge Fusté fully informed of the merits of Settlement Class Members' claims and negotiated the proposed Settlement while zealously advancing the position of Plaintiffs and Settlement Class Members and being fully prepared to continue to litigate rather than accept a settlement that was not in the best interest of Plaintiffs and the Settlement Class. *Id*. at ¶ 12. In sum, prior to negotiating the Settlement, Class Counsel spent significant time conferring with Plaintiffs, investigating facts, researching the law, preparing a well-pleaded complaint, engaging in discovery, working with an expert witness, and reviewing important documents and data. *Id*. at ¶ 13. This resulted in the Settlement for which Preliminary Approval is respectfully requested.

## III. SETTLEMENT TERMS

### A. The Settlement Class.

The Settlement Class is a Federal Rule of Civil Procedure 23(b)(3) opt-out class, defined as:

> All holders of Accounts who during the Class Period paid and were not refunded an NSF and/or OD Fee in connection with an ACH or check transaction that was presented for payment more than once, in the following instances:
>
> (1) for ACH transactions, if the ACH transaction was resubmitted by the merchant or the merchant's bank with a "RETRY" payment indicator after the initial request for payment was declined <u>and</u> it was either:
>
> a) returned by BPPR again for insufficient funds resulting in a NSF fee; or,
>
> b) paid by BPPR against insufficient funds resulting in an OD fee.

(2) for ACH transactions, if the ACH transaction is preceded by a returned ACH entry submitted by the same merchant in the same amount within the last ten calendar days, even if the merchant did not use the "RETRY" payment indicator.

(3) for paper check transactions, if the check was resubmitted for payment after the initial request for payment was declined and it was either:

a) returned by BPPR again for insufficient funds resulting in a NSF fee; or

b) paid by BPPR against insufficient funds resulting in an OD fee.

Excluded from the Settlement Class is Defendant, its parents, subsidiaries, affiliates, officers and directors, all Settlement Class members who make a timely election to opt-out, all judges assigned to this litigation and their immediate family members, and holders of accounts at a BPPR branch located in the British Virgin Islands who do not also have an account at a BPPR branch located in the United States.

Agreement at ¶ 3.1.

## B.    <u>Relief for the Benefit of the Settlement Class.</u>

### 1.    Settlement Fund

The Settlement Fund is $5.5 million and will be used to pay: (a) Settlement Class Members their respective Settlement Class Member Payments out of the Net Settlement Fund; (b) Class Counsel for any Court awarded attorneys' fees and costs; (c) any Court awarded Service Awards for the Class Representatives; (d) Settlement Administration Costs; and (e) if funds remain after the second distribution of the Net Settlement Fund to Settlement Class Members, to distribute to the *cy pres* recipient. Agreement at ¶ 6.6.

Settlement Class Members do not have to submit claims or take any other affirmative step to receive relief under the Settlement. Instead, as soon as practicable, but no later than 60 days following the Effective Date of the Settlement, BPPR and/or the Settlement Administrator will distribute the Net Settlement Fund to all Settlement Class Members. *Id* at ¶ 6.6.2.

## 2. Allocation of the Settlement Class Member Payments

Payments from the Net Settlement Fund to the Settlement Class Members shall be calculated as follows:

(Net Settlement Amount divided by the total number of Class Fees the Settlement Class Members collectively were assessed in connection with the transactions at issue);

Multiplied by:

Total number of Class Fees the Settlement Class Member was charged and paid in connection with the transactions at issue.

*Id.* at ¶ 7.1.

## 3. Distribution of Settlement Class Member Payments

Settlement Class Members who are Current Accountholders with BPPR when the Net Settlement Fund is distributed will receive a credit in the amount of their Settlement Class Member Payments applied to any account they are maintaining at the time of the credit. *Id.* at ¶ 6.6.2.3. If by the deadline to apply credits of Settlement Class Member Payments to accounts BPPR is unable to complete certain credit(s), BPPR shall deliver the total amount of such unsuccessful Settlement Class Member Payment credits to the Settlement Administrator to be paid by check in accordance with the procedure for Past Accountholders to receive payment. *Id.* at ¶ 6.6.2.4.

For Settlement Class Members who are Past Accountholders when the Net Settlement Fund is distributed or at that time do not have an account, they shall be sent a check by the Settlement Administrator at the address used to provide the Notice, or at such other address as designated by the Settlement Class Member. *Id.* For a jointly held Account of one or more Current Accountholders, payment will be made as described in Section 6.6.2.3 of the Settlement and may be deposited into an account of the primary Accountholder, whether or not such account is jointly held. *Id.* at ¶ 6.6.2.6. For a jointly held Account of a Past Accountholder, payment will be made

by means of a check that will be payable to the primary Accountholder named on the Account, and mailed to the last known address for that primary Accountholder. *Id.* The Settlement Administrator will make reasonable efforts to locate the proper address for any check returned by the Postal Service as undeliverable and will re-mail it once to the updated address or, in the case of a jointly held account, and in the Settlement Administrator's discretion, to an accountholder other than the one listed first. *Id.* The Settlement Class Member shall have one-hundred eighty (180) days to cash the check. After 240 calendar days from the Effective Date, any excess funds remaining from the Settlement Amount that have not been distributed in accordance with other provisions of the Settlement shall, if economically feasible, be distributed to the Settlement Class Members who successfully cashed checks or received their Settlement Class Member Payment as a credit. The payment notices accompanying the Settlement checks for a second distribution shall notify the recipients that the checks must be cashed within 90 days from the date on the payment notice and that the enclosed check shall not be valid after that date. *Id.* at ¶ 6.7.

### 4. Disposition of Residual Funds

If a second distribution of remaining funds costs more than the amount to be distributed or is otherwise economically unfeasible, or if additional funds remain after a second distribution, Class Counsel shall petition the Court to distribute any remaining funds to a *cy pres* recipient agreed upon by the Parties and approved by the Court. *Id.* In no event shall any portion of the Settlement Fund revert to BPPR.

### C. <u>Releases.</u>

In exchange for the benefits conferred by the Settlement, upon the Effective Date, the Releasing Parties, Class Representatives and each Settlement Class Member, and each of their respective heirs, executors, administrators, trustees, guardians, agents, successors, and assigns, and

all those acting or purporting to act on their behalf, fully and finally release and discharge the Released Parties of and from the Released Claims. This Release shall be included as part of any judgment, so that all released claims and rights shall be barred by principles of res judicata, collateral estoppel, and claim and issue preclusion and shall bind all Settlement Class Members and all the Releasing Parties, and all Released Claims shall be dismissed with prejudice and released as against the Released Parties. The Released Claims are released regardless of whether these claims are known or Unknown Claims, actual or contingent, liquidated, or unliquidated. *Id.* at ¶¶ 1.39, 13.1.

### D. The Notice Program.

The Parties recommend Kroll as the Settlement Administrator, one of the leading notice administration firms in the United States. *Id.* at ¶ 1.43. The Settlement Administrator will oversee the Notice Plan, which is designed to provide the best notice practicable and is tailored to take advantage of the information BPPR has available about the Settlement Class. Kaliel Decl., at ¶ 14. The Notice Plan is reasonably calculated to apprise Settlement Class members of the following through the Notice: a description of the material terms of the Settlement; a deadline to exclude themselves from the Settlement Class; a deadline to object to the Settlement; the Final Approval Hearing date; and the Settlement Website address to access the Settlement Agreement and other related documents. Settlement Agreement, Exhibits 1-2. The Notice and Notice Plan constitute sufficient notice to all persons entitled to notice, satisfying all applicable requirements of law, including Rule 23 and constitutional due process. Kaliel Decl., at ¶ 15.

The Notice Plan is comprised of three parts: (1) direct Email Notice to those Settlement Class Members who agreed to receive communications from BPPR by email; (2) direct Postcard Notice to all Settlement Class Members who did not agree to receive communications from BPPR

by email, or for whom the Settlement Administrator is unable to send Email Notice using the email address provided by BPPR; and (3) Long Form Notice (containing more detail than the Email or Postcard Notice) posted on the Settlement Website and available by U.S. mail on request to the Settlement Administrator. Settlement Agreement at Section 5 and Exs. 1-2 thereto. A Spanish version of the Long Form Notice will also be available for review at the Settlement Website and upon request to be sent by mail.

The Long Form Notice will describe the procedure that Settlement Class Members must follow to (a) opt-out of the Settlement or (b) object to the Settlement, Class Counsel's application for attorneys' fees, costs and expenses, or the Service Awards for the Class Representatives. Specifically, opt-outs must be postmarked no later than the last day of the Opt-Out Deadline, and objections must be postmarked no later than the last day of the Opt-Out Period (no later than 30 days before the Final Approval Hearing). *Id.* at ¶¶ 1.31. For an objection to be valid, it must include: (a) the name of the Action or other information to confirm Objector is a Class Member; (b) the objector's full name, address, email address (if any), and telephone number; (c) information identifying the objector as a Settlement Class Member, including evidence that the objector is a member of the Settlement Class; (d) a written statement of all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (e) the number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case the objector believes applicable; (f) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to

the Settlement or fee application; (g) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five years; (h) any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity; (i) the identity of all counsel (representing or assisting the objector, if any; (j) the identity of all counsel representing the objector who will appear at the Final Fairness Hearing, if any; (k) a list of all persons who will be called to testify at the Final Fairness Hearing in support of the objection, if any; (l) a statement confirming whether the objector intends to personally appear and/or testify at the Final Fairness Hearing; (m) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation), if any; (n) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last 3 years; (o) a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any Person) has filed an objection to any proposed class action settlement within the last 3 years; and (p) a list, by case name, court, and docket number, of all other cases in which the objector has been a named plaintiff in any class action or served as a lead plaintiff or class representative. To be timely, written notice of an objection in the appropriate form must be filed with the Court by the Objection Deadline and served concurrently therewith upon Class Counsel and BPPR's Counsel. *Id*. at ¶ 9.4.

If the objection is made by or through an attorney, the written objection must also include: (a) the identity and number of the Settlement Class Members represented by objector's counsel; (b) the identity and number of such represented Settlement Class members who have opted out of the Settlement Class; and (c) the identity and number of such represented Settlement Class Members who have remained in the Settlement Class and have not objected. If the attorney intends to seek fees and expenses from anyone other than the objectors he or she represents, the attorney shall also file with the Court and serve upon Class Counsel and BPPR's Counsel, not later than 15 days before the Final Fairness Hearing or as the Court may otherwise direct, a document containing the following: (i) the amount of fees sought by the attorney for representing the objector and the factual and legal justification for the fees being sought; (ii) a statement regarding whether the fees being sought were calculated on the basis of a lodestar, contingency, or other method; (iii) the number of hours already spent by the attorney and an estimate of the hours to be spent in the future; and (iv) the attorney's hourly rate. *Id.* at ¶ 9.4.

The Notice Program (Postcard Notice and Email Notice, including the Notice Re-Mailing Process) shall be completed before the filing of the Motion for Final Approval.

The Settlement Website, which will include hyperlinks to the Agreement, the Long Form Notice, the Preliminary Approval Order and such other documents as the Parties agree to post or that the Court orders posted, will be established following Preliminary Approval and prior to the commencement of the Notice Plan. *Id*. at ¶ 1.5.

### E. Settlement Administration

The Settlement Administrator is one of the leading class action settlement administrators in the United States. Its Settlement Administration responsibilities are delineated in the Settlement Agreement.

F.     **Settlement Termination.**

Either Party may terminate the Settlement if the Court fails to grant Final Approval of the Settlement in any material respect. Agreement at ¶ 8.

G.     **Class Representative's Service Award.**

Class Counsel will seek a Service Award of $10,000.00 for each of the Class Representatives. Agreement at ¶ 11. The Service Awards will be paid from the Settlement Fund and will be in addition to the Settlement Class Member Payments each Class Representative will be entitled to receive under the Settlement. *Id.* The awards will compensate the Class Representatives for their time and effort and for the risks they assumed in prosecuting the Actions. *Id.* Specifically, Plaintiffs provided assistance that enabled Class Counsel to successfully prosecute the Actions and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding documents and information to Class Counsel; (3) participating in conferences with Class Counsel; and (4) reviewing the settlement documentation. *Id.* In so doing, the Plaintiffs were integral to the case. *Id.* BPPR does not object to Class Counsel's request for the Service Awards. *Id.*

H.     **Attorneys' Fees and Costs**.

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs. Kaliel Decl., at ¶ 16. They are entitled to request, and BPPR will not oppose, attorneys' fees of up to 33% of the Settlement Fund, as well as reimbursement of litigation costs incurred in connection with the Actions. Settlement Agreement at ¶ 10. The Parties negotiated and reached agreement regarding fees, costs and expenses only after agreeing on all material terms of the Settlement. Kaliel Decl., ¶ 17. Such award is subject to this Court's approval and will serve to

compensate for the time, risk and expense Plaintiffs' counsel incurred pursuing claims for the Settlement Class.

## IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE PROPOSED SETTLEMENT

### A.    Standard for Determining Fairness, Adequacy, and Reasonableness of a Proposed Settlement.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any class action settlement. "The fundamental duty of the Court when it reviews a settlement agreement for approval is to determine whether the proposed settlement is 'fair, reasonable and adequate.'" *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D.P.R. 2010) (citing Fed. R. Civ. P. 23(e)(2)); *see also In Re Relafen Antitrust Litig.*, 360 F.Supp.2d 166, 192 (D. Mass. 2005). "At the preliminary approval stage, the Court need not make a final determination regarding the fairness, reasonableness and adequateness of a proposed settlement; rather, the Court need only determine whether it falls within the range of possible approval." *Id.* (citing *Scott v. First Am. Title Ins. Co.*, No. 06–286, 2008 WL 4820498 at *3 (D. N.H. 2008); *see also In Re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534–35 (3d Cir. 2004); *Colella v. Univ. of Pittsburgh*, 569 F.Supp.2d 525, 527 (W.D.Pa.2008). An illegal or collusive settlement agreement will not fall within the range of possible approval. *See Scott*, 2008 WL 4820498 at *3.

In *In re Puerto Rican Cabotage Antitrust Litig.*, the court "adopted the standard set forth by the Third Circuit in *In Re General Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir.1995), and applied by the District Court for the District of Massachusetts in *In Re Lupron Market. And Sales Prac. Litig.*, 345 F.Supp.2d 135, 137 (D.Mass.2004)." 269 F.R.D. at 140. "Under the standard set forth in these cases, where the Court makes four findings, 'a presumption of fairness attaches to the court's determination' and preliminary approval is

appropriate." *Id*. (quoting *In Re Lupron*, 345 F.Supp.2d at 137); *see also In Re General Motors*, 55 F.3d at 785). Those four findings are that: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Id*. These factors are not exhaustive, and this Court has a "wide discretion in assessing the weight and applicability of each factor." *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004).

This determination, while committed to the sound discretion of the Court, is to be made with deference to the judgment of the class representatives and their counsel, as "the court's intrusion upon what is otherwise a private consensual agreement between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. Accordingly, "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits," and the court must not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id*.

Instead, the purpose of the preliminary evaluation and approval of a proposed class action settlement is to determine whether the settlement is "within a range of possible judicial approval." *Wright v. Linkus Enterprises, Inc*., 259 F.R.D. 468, 472 (E.D. Cal. 2009) (*citing* Newberg on Class Actions §11:25 (4th ed. 2002)); *see also N. Cty. Contractor's Assn. v. Touchstone Ins. Servs.*, 27 Cal. App. 4th 1085, 1089, 33 Cal. Rptr. 2d 166 (1994) (describing this as a "reasonable range."). The preliminary approval is merely the prerequisite to giving notice to elicit the class members'

reaction to the proposed Settlement Agreement and determine whether or not to opt out of the Settlement Class. The preliminary approval process allows that to happen.

Lastly, as a matter of public policy, settlement is a strongly favored method for resolving disputes. *See Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).

The factors set forth in *In re Puerto Rican Cabotage Antitrust Litig.* weigh in favor of granting preliminary approval. First, the negotiations did in fact occur at arm's length, through a contested mediation, with the help of the Hon. José Fusté (Ret.). Second, there was an extensive discovery effort in this case, including for purposes of mediation which was sufficient to educate the parties as to the weaknesses and strengths of their cases. Moreover, Class Counsel is highly experienced in this area of the law, having acted as Class Counsel in numerous successful class actions, including against other financial institutions. Kaliel Decl., ¶ 18.

### 1.    Strength of Plaintiffs' Case

"When assessing the strength of [the] plaintiff's case, the court does not reach 'any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation.'" *Van Lith v. iHeartMedia + Entm't, Inc.*, No. 1:16-CV-00066-SKO, 2017 WL 1064662, at *11 (E.D. Cal. Mar. 20, 2017) (*quoting Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (quotations omitted). Of course, the Court cannot fully assess the strength of the Plaintiff's case, because evidence has not been fully presented. *Adoma*, 913 F. Supp. 2d at 975. Instead, the Court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements."

Plaintiffs and Class Counsel are confident in the strength of their cases, but they are also pragmatic in their awareness of the various defenses available to BPPR, and the risks inherent to

litigation and establishing both liability and damages. This is a crucial factor favoring settlement, as Courts routinely approve settlements where a plaintiff would have faced significant legal and factual obstacles to establishing liability. *Cruz v. Sal-Mark Rest. Corp.*, No. 1:17-CV-0815 (DJS), 2019 U.S. Dist. LEXIS 13529, at *14 (N.D.N.Y. Jan. 28, 2019). Indeed, "[l]itigation inherently involves risks." *Id.* The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of [Plaintiff's] case." *Baudin*, 2020 U.S. Dist. LEXIS 146280, at *23.[2]

The dispute centers on BPPR's allegedly improper assessment of certain OD and NSF Fees–claims BPPR forcefully denied throughout the litigation of the Actions. With this Settlement, Plaintiffs have achieved their desired goal of compensating Settlement Class Members charged such fees during the Class Period. While Plaintiffs' best-case scenario is a 100% refund of the Retry NSF Fees, there was a substantial risk that Plaintiffs would not achieve such a result. BPPR would have sought summary judgment in its favor after discovery closed. Success on the merits was not certain. BPPR contends that the relevant Account agreements are unambiguous, and even if they were, the extrinsic evidence resolves the ambiguity in its favor on whether the fees at issue are permitted. Thus, although Plaintiffs believe they have a strong chance on the merits, Plaintiffs might not certify the classes or would lose at summary judgment or trial, or on appeal. Kaliel Decl., at ¶ 19.

---

[2] *See also In re Global Crossing*, 225 F.R.D. at 461 ("the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *12-13 (S.D.N.Y. Sept. 29, 2003) (few jury trials result in full amount of damages claimed).

For these reasons, a Settlement Fund that represents approximately 45% of the Class Fees allegedly wrongly charged to Settlement Class Members, as this Settlement does—and without the inherent litigation risks—is a very fair and reasonable recovery. Id., ¶ 20.

This Settlement either meets or exceeds the vast majority of court-approved recoveries in overdraft fee class actions nationwide. *See, e.g., Roberts v. Capital One*, 16 Civ. 4841 (LGS), Dkt. 198 (S.D.N.Y. Dec. 1, 2020) (approving cash fund of approximately 34% of the most likely recoverable damages for class members); *Bodnar v. Bank of Am., N.A.*, No. 14-3224, 2016 U.S. Dist. LEXIS 121506, at *12 (E.D. Pa. Aug. 4, 2016) (approving a cash fund of between 13%-48% of the maximum amount of damages they may have been able to secure at trial, and describing such a result as a "significant achievement" and outstanding"); *In re Checking Account Overdraft Litig.*, No. l:09-MD-02036-JLK, 2015 U.S. Dist. LEXIS 193690, at *37 (S.D. Fla. May 22, 2015) (approving $31,767,200 settlement representing approximately 35% of the most probable aggregate damages); *Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST, 2015 U.S. Dist. LEXIS 56370, at *9 (N.D. Cal. Apr. 28, 2015) (approving $2,900,000 settlement for approximately 38% of what could have been obtained at trial); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190562, at *3-4 (S.D. Fla. Aug. 2, 2013) (approving $4,000,000 settlement for 25% of the most probable recoverable damages); *Mosser v. TD Bank, N.A.*, No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 187627, at *83-84 (S.D. Fla. Mar. 18, 2013) (approving $62,000,000 settlement for 42% of the most probable damages and praising it as an "outstanding result").

The success of Plaintiffs' claims turns on these and other questions that are certain to arise in the context of their motions for class certification and at trial, as they have in other similar cases.

The legal issues raised in this case have not been decided in the cases in which plaintiffs have sued financial institutions for assessing fees based on the specific contractual language.

Each of these risks, by itself, could easily have impeded Plaintiffs' and the Settlement Class' success at trial. Under the circumstances, Plaintiffs and Class Counsel appropriately determined that Settlement outweighs the gamble of continued litigation. Kaliel Decl., at ¶ 21. Moreover, even if they prevailed at summary judgment and trial, any recovery could be delayed for years by appeals. Where a court determines that a claim may have "some measure of merit," but that it also faces inherent weaknesses, the court should find that the "strength of Plaintiff's case" factor "weighs in favor" of final approval of the Settlement. *Van Lith*, 2017 WL 1064662, at *11.

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing the degree of risk of continued litigation, "the court evaluates the time and cost required." *Adoma*, 913 F. Supp. 2d at 976. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* (*quoting Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004)).

Of course, the risk and expense of continued litigation is obvious; absent settlement, the Parties would be required to continue litigation separately in each of the Actions, which necessarily would involve significant discovery, motions for certification which BPPR would surely contest, and other dispositive motions such as motions for summary judgment and possible appeals. Once all is said and done, the ultimate recovery might be of no greater value – or of lesser value – to that in the proposed Settlement Agreement. Moreover, the process only becomes more complex over a longer period of time, as new issues emerge, for example, through discovery or simply

determinations relating to case strategy.  Accordingly, this factor clearly weighs in favor of approval.

### 3. Relief Offered in Settlement

The relief offered in a settlement is assessed as a whole, "complete package" for overall fairness. *DIRECTV, Inc*., 221 F.R.D. at 527 (*quoting Officers for Justice*, 688 F.2d at 628).  Indeed, it is "well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (emphasis added) (*citing Linney*, 151 F.3d at 1242 (quotation omitted)).

Here, the relief includes the $5.5 million Settlement Fund and perhaps more importantly, BPPR has agreed to cease—for a period of at least five years—the "retry" fee assessment practice at the heart of this case. This prospective relief will, Class Counsel estimates, save the Settlement Class and BPPR accountholders approximately $9 million over the next five years. Kaliel Decl., ¶ 22.  Lastly, the Bank is updating its checking account documents to provide additional clarity with respect to overdraft and insufficient funds fees—another benefit that will accrue to the Settlement Class. This package of benefits is a terrific recovery for the Settlement Class.

While a larger award is "theoretically possible, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *Barbosa*, 297 F.R.D. at 447 (*quoting Linney*, 151 F.3d at 1242); *see also Hanlon*, 150 F.3d at 1027 (the fact that "the settlement could have been better…does not mean the settlement presented was not fair, reasonable, or adequate.").  Accordingly, this factor weighs in favor of approval of the Settlement Agreement.

### 4. Arm's Length, Non-Collusive, Negotiated Resolution

Courts put "a good deal of stock in the product of arms-length, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (*citing Hanlon*, 150 F.3d at 1027; *Officers for Justice*, 688 F.2d at 625). Critically, there is "[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011) (emphasis added), *supplemented*, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

Here, Counsel for the Parties have separately initiated preliminary reviews of the applicable law and facts pertaining to the alleged claims, potential defenses thereto, and the damages claimed therein. Further, the Parties engaged in an arms-length mediation with the Hon. José Fusté (Ret.) in person in San Juan, which resulted in the Settlement. The resulting proposed Settlement Agreement is the product of hours of such arm's length negotiations between the Parties, which allows for an initial presumption of fairness.

**5.    Experience and Views of Counsel, and Plaintiffs and Counsel's Adequate Representation of the Class**

"In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties." *Van Lith v. iHeartMedia + Entm't, Inc.*, No. 1:16-CV-00066-SKO, 2017 WL 1064662, at *13 (E.D. Cal. Mar. 20, 2017) (*citing Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013)). "Great weight is accorded to the recommendation of counsel, who are the most closely acquainted with the facts of the underlying litigation." *Id.* (*quoting Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (citation omitted). Accordingly, "absent fraud, collusion, or the like," the Court "should be hesitant to substitute its own judgment for that of counsel." *Id*. (*citing DIRECTV, Inc.*, 221 F.R.D. at 528).

Class Counsel has extensive experience in litigating consumer and employment class actions Here, Class Counsel devoted substantial time and resources investigating, litigating, and resolving the Actions. Plaintiffs settled the Actions with the benefit of Class Counsel's years of experience litigating cases like this one, discovery, and data and damage analysis. Kaliel Decl., ¶ 23. Due to their extensive experience, the Parties' counsel are well aware of the relative strengths and weaknesses of their respective cases, informing the negotiations between counsel. Class Counsel's analysis allowed them to confidently evaluate Plaintiffs' claims' strengths and weaknesses, the prospects for success at class certification and trial, and the merits of claims and defenses, the risks attendant to continued litigation, and the benefits of settling.

### 6. The Settlement has no Obvious Deficiencies

Furthermore, because the Settlement Agreement has no obvious deficiencies, preliminary approval is proper. *See Mora v. Cal West Ag Services, Inc*., 2019 WL 2084725, at *3 (E.D. Cal. 2019), *report and recommendation adopted*, 2019 WL 3760402 (E.D. Cal. 2019) (*citing* Newberg on Class Actions §13:13 (5th ed. 2014)) ("The purpose of the initial review is to ensure that an appropriate class exists and that the agreement is non-collusive, without **obvious deficiencies**, and within the range of possible approval as to that class.") (emphasis added); *Maciel v. Bar 20 Dairy, LLC*, 2018 WL 5291969, at *3 (E.D. Cal. 2018) (*citing* Newberg on Class Actions §13:13 (5th ed. 2011) ("Though Rule 23 does not explicitly provide for such a procedure, federal courts generally find preliminary approval of settlement and notice to the proposed class appropriate if the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'") (emphasis added) (*quoting Lounibos v. Keypoint Government Solutions Inc*., 2014 WL 558675, at *5 (N.D. Cal.

2014)). No such "obvious deficiencies" are present here. The settlement includes a sizeable fund for distribution to the Settlement Class Members and the cessation of the challenged bank fee practice.

**B.    The Proposed Method of Distributing Relief and Processing Settlement Class-Member Claims is Adequate.**

Because the Settlement intends to distribute the Net Settlement Fund on a pro rata basis, there is no doubt Settlement Class Members will be treated equitably. This process is the most rational and reasonable means for distributing the Net Settlement Fund to the Settlement Class Members. The Proposed Settlement achieves a fundamentally fair, adequate, and reasonable resolution of all relevant claims.

**V.    THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT CLASS**

As part of the Settlement, the Parties also seek certification of the Settlement Class. In order to certify a class, "[a] district court must conduct a rigorous analysis of the prerequisites established by Rule 23." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir.2003) (citing Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982)). In doing so, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir.2000) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)). "[W]hen confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id*. (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Nevertheless, "[w]hen a settlement class is proposed, it is incumbent on the district court to give heightened scrutiny to the requirements of Rule 23 in order to protect absent class members." *In*

*re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 88 (D.Mass.2005) (citing *Amchem*, 521 U.S. at 620). "This cautionary approach notwithstanding, the law favors class action settlements." *Id.* (citing *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir.1996)).

Accordingly, district courts enjoy broad discretion in making such class certification determinations, *see Navellier v. Sletter*, 262 F.3d 923, 941 (9th Cir. 2001), so long as the following criteria are met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). All of these factors are present here, and therefore, conditional certification of the Settlement Class is appropriate.

Lastly, class certification brought pursuant to Rule 23(b)(3) requires a determination that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy." For the purposes of the Settlement, the Parties agree that these criteria are satisfied under the lesser standard of scrutiny applicable here.

Numerosity. Numerosity is satisfied because the Settlement Class consists of tens of thousands of BPPR customers, and joinder of all such persons is impracticable. Kaliel Decl., ¶ 24. See Fed. R. Civ. P. 23(a)(1).

Commonality. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 389-390 (2011) (citation omitted). Here, commonality

for settlement approval purposes is satisfied. There are multiple questions of law and fact – centering on the alleged systematic practice of assessing fees – that are common to the Settlement Class Members, alleged to have injured all Settlement Class members in the same way, and would generate common answers central to the claims' viability were the Action to be tried. Kaliel Decl., at ¶ 25.

Typicality. For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent Settlement Class members, satisfying Rule 23(a)(3)'s typicality requirement. Typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citation omitted).[3] Claims of all members of a purported class need not be identical. For settlement approval purposes, to the extent that Plaintiffs are typical of absent Settlement Class Members because they were assessed more than one NSF fee or both a NSF and an OD fee on "items" resubmitted for payment in connection with an ACH and/or a paper check transaction, they will benefit equally from the relief provided by the Settlement. Kaliel Decl., at ¶ 26.

Adequacy. Plaintiffs and Class Counsel satisfy Rule 23(a)(4)'s adequacy of representation requirement, which "serves to uncover conflicts of the interest between named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625. The analysis of whether a class

---

[3] Commonality and typicality tend to merge, as "[t]he crux of both requirements is to ensure that maintenance of a class action is economical and that the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Weber v. Align Tech., Inc.*, No. 5:07-CV-0535 (GTS/ATB), 2010 U.S. Dist. LEXIS 54187, at *13 (N.D.N.Y. June 2, 2010). Further, "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Hill*, 2017 U.S. Dist. LEXIS 221081, at *22.

representative is adequate "is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Here, Plaintiffs' interests are coextensive with, not antagonistic to, the Settlement Class' interests because Plaintiffs and the absent Settlement Class Members have the same interests in the relief afforded by the Settlement, and absent Settlement Class Members have no diverging interests. Kaliel Decl., at ¶ 27. Further, Plaintiffs are represented by qualified and competent counsel with extensive experience and expertise prosecuting complex class actions, including similar consumer actions. *Id*. at ¶ 28. Class Counsel has devoted substantial time and resources to this Action and will vigorously protect the interests of the Settlement Class. *Id*. at ¶ 29.

<u>Predominance</u>. Certification of the Settlement Class is further appropriate because the questions of law or fact common to Settlement Class members predominate over any questions affecting only individual members. See Fed. R. Civ. P. 23(b)(3). For purposes of satisfying Rule 23(b)(3), "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (abrogated on other grounds). Certification of the Settlement Class for settlement purposes is further appropriate because the questions of law or fact common to all members of the Settlement Class substantially outweigh any possible issues that are individual to each member of the Settlement Class. Kaliel Decl., at ¶ 30. For example, each Settlement Class Members' relationship with BPPR arises from Account agreements that are the same or substantially similar in all relevant respects to the other Settlement Class members' agreements, and the fees at issue were charged

based on "items" resubmitted for payment in connection with an ACH and/or a paper check transaction. *Id.*, at ¶ 31.

Superiority. Further, resolution of thousands of claims in one action is far superior to individual lawsuits because it promotes consistency and efficiency of adjudication. See Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

## VI.     THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." Manual for Compl. Lit., § 21.312 (internal quotation marks omitted). The best practicable notice is notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Navy Federal & Trust Co.*, 339 U.S. 306, 314 (1950). "Rule 23 . . . requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts. Those who cannot be readily identified must be given the best notice practicable under the circumstances." Manual for Compl. Litig., § 21.311. Settlement notices under Rule 23 satisfy due process when they adequately advise members of the Settlement Class of their rights under the Settlement, and meet the requirements of due process. The Settlement Notices fairly, plainly, accurately, and reasonably provide Settlement Class Members with all required information, including (among other things): (1) a summary of the Actions and the claims asserted; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) instructions as to how Settlement Class Members may make a claim; (5) a disclosure of the release of claims should they choose to remain in the Settlement Class; (6) an explanation of Settlement

Class Members' opt-out rights, a date by which Settlement Class Members must opt out, and information regarding how to do so; (7) instructions as to how to object to the Settlement and a date by which Settlement Class Members must object; (8) the date, time, and location of the Final Fairness Hearing; (9) the internet address for the settlement website and the toll-free number from which Settlement Class Members may obtain additional information about the Settlement; and (10) the names of the law firms representing the Settlement Class, contact information for the lead firms, and information regarding how Class Counsel and the named Class Representative will be compensated. The proposed Notice Program satisfies these content requirements. It is designed to reach a high percentage of the Settlement Class by sending Email Notice or Postcard Notice to Settlement Class Members and exceeds the requirements of constitutional due process. Kaliel Decl., at ¶ 32. Therefore, the Court should approve the Notice Plan and the form and content of the Notices attached to the Agreement as Exhibits 1 and 2.

## VII.    CONCLUSION

For the reasons set forth above, the Plaintiffs respectfully request preliminary approval of the proposed Settlement Agreement, and that the Settlement Class be certified conditioned on final approval of the Settlement.

**WHEREFORE,** the Plaintiffs respectfully request: (1) the preliminary approval of the proposed Class Action Settlement Agreement; and (2) the certification of the Settlement Class for settlement approval purposes conditioned on final approval of the Settlement Agreement.

Dated: August 15, 2022                   Respectfully submitted,
                                         ***Attorneys for Plaintiffs***

                                         **KALIEL PLLC**
                                         Jeffrey Kaliel
                                         (Admitted pro hac vice)

jkaliel@kalielpllc.com
Sophia Goren Gold
sgold@kalielpllc.com
(Admitted pro hac vice)
1100 15th Street NW, 4th Floor
Washington, DC 20005
(202) 350-4783

**EDELSBERG LAW, PA**
Scott Edelsberg
(Admitted pro hac vice)
Florida Bar No. 0100537
scott@edelsberglaw.com
Christopher Gold
(Admittted pro hac vice)
Florida Bar No. 88733
chris@edelsberglaw.com
19495 Biscayne Blvd #607
Aventura, FL 33180
Telephone: 305-975-3320

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis
(Admitted pro hac vice)
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 1205
Miami, FL 33132
Telephone: 305-479-2299

**INDIANO & WILLIAMS, P.S.C.**
207 del Parque Street, Third Floor
San Juan, Puerto Rico 00912
Tel: (787) 641-4545; Fax: (787) 641-4544
david.indiano@indianowilliams.com

*s/ David C. Indiano*
**DAVID C. INDIANO**
USDC PR Bar No. 200601