**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| PEDRO SOTO MELENDEZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BANCO POPULAR DE PUERTO RICO,<br><br>Defendant. | Civil Action No. 20-1057 (JAG)<br><br>*(Lead Case for Settlement Approval Purposes, No. 20-01057-JAG)*<br><br>**JURY TRIAL DEMANDED** |
| SANDRA ORAMA CARABALLO and MIGUEL QUINONES ACOSTA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BANCO POPULAR DE PUERTO RICO,<br><br>Defendant. | Civil Action No. 22-1107<br><br>**JURY TRIAL DEMANDED** |

**NOTICE OF MOTION AND MOTION FOR: (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT; (2) FINAL CERTIFICATION OF SETTLEMENT CLASS FOR SETTLEMENT APPROVAL PURPOSES; (3) AWARD OF ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARDS**

## I. PRELIMINARY STATEMENT

Plaintiffs Pedro Soto Meléndez, Sandra Janine Orama Caraballo, and Miguel Quiñones, on their own behalf and on behalf of the Settlement Class they represent in the actions styled *Soto v. Banco Popular de Puerto Rico*, No. 3:20-cv-01057 (D.P.R.) (the "*Soto* Action") and *Orama Caraballo et al. v. Banco Popular de Puerto Rico*, No. 3:22-cv-01107 (D.P.R.) (the "*Orama* Action") (hereinafter, referred to jointly as the "Actions") seek final approval of the class

settlement set forth in the Settlement Agreement and Releases (the "Settlement Agreement" or "Settlement") previously submitted to the Court. As described below, notice has now been given to the Settlement Class, and no Settlement Class Member has either objected to or opted out of the proposed Settlement.

As a result of arm's arms-length negotiation, including in-person mediation with the aid of the Hon. José Fusté (Ret.) on April 5, 2022, in San Juan, Puerto Rico, the parties in the Actions reached a proposed Settlement. The Court should grant Final Approval because the Settlement provides substantial relief for the Settlement Class and the terms of the Settlement are well within the range of reasonableness and consistent with applicable case law. Indeed, given the significant risks inherent in these Actions, the $5.5 million Settlement Fund alone is an excellent result for the Settlement Class. But that is not all. Perhaps more importantly, Banco Popular de Puerto Rico ("BPPR" or the "Bank") has agreed to cease—for a period of at least five years—the "retry" fee assessment practice at the heart of this case. This prospective relief will, Class Counsel estimates, save the Settlement Class and BPPR accountholders approximately $9 million over the next five years. Declaration of Jeffrey D. Kaliel ("Kaliel Decl."), attached hereto as Ex. B, at ¶ 13. Lastly, the Bank is updating its checking account documents to provide additional clarity with respect to overdraft fees and insufficient funds fees—another benefit that will accrue to the Settlement Class. This package of benefits is a terrific recovery for the Settlement Class.

The Settlement satisfies all First Circuit Court of Appeals criteria for settlement approval. One keystone of this Settlement is that all Settlement Class Members will receive their pro rata share of the Net Settlement Fund without having to complete any claims forms, and Settlement Class Members will not be asked to prove they were damaged by practices alleged in the Actions. Instead, available information of the relevant fees assessed to each Settlement Class Member

during the Class Period will be used to calculate each Settlement Class Member's distribution. Thus, the plan of allocation fairly and adequately accounts for the value of each Settlement Class Member's individual claim. In the face of certain risks discussed below, this Settlement is fair and reasonable and merits Final Approval.

Plaintiffs and Class Counsel have concluded that it is in the best interest of Plaintiffs and the Class to settle this Action on the terms described herein and, accordingly, respectfully request the Court grant final approval of this Settlement. While Plaintiffs and Class Counsel believe that their causes of action are meritorious, success on the merits was not certain. In addition, the proposed Settlement Class meets all of the elements of Federal Rules of Civil Procedure 23(a) and (b)(3), and therefore the Court should grant final certification of the Settlement Class.

## II. NOTICE HAS BEEN SUCCESSFULLY DELIVERED TO THE SETTLEMENT CLASS

Consistent with this Court's Preliminary Approval Order, the Settlement Administrator has provided notice to the Settlement Class. Prior to distributing notice to the Class members, the Settlement Administrator established a website, www.PRBankFeeClassAction.com, as well as a toll-free line that Class Members could access or call for any questions or additional information about the proposed Settlement. (Declaration of Settlement Administrator ("Notice Decl."), attached as Exhibit A, ¶¶ 7 and 8.)

Once Class Members were identified via BPPR's business records, the notices attached to the Settlement Agreement were delivered to each Class member. For current BPPR accountholders who have elected to receive bank communications via email, notice was delivered via email. (*Id*., ¶ 9.) To former BPPR accountholders, and to all current accountholders who have not elected to receive communications by email or for whom BPPR does not have a valid email address, notice was delivered by U.S. Mail postcard. (*Id*., ¶ 10.)

On December 12, 2022, the Settlement Administrator emailed the Court-approved notice of the Settlement to the 129,655 Class Members who were identified as current BPPR accountholders who elected to receive bank communications via email. (*Id.,* ¶ 9.) In total, emailed Notice was delivered, without return, to 111,620 unique Class members. (*Id.,* ¶ 9.) The mailed Notice was subsequently sent to the Class Members whose Email Notice was undeliverable.

On December 16, 2022, the Settlement Administrator mailed the Court-approved notice of the Settlement to 109,720 Class members to whom email notice was not previously attempted at their last known addresses after updating through the National Change of Address database. (*Id*., ¶ 10.) For returned notices, the Settlement Administrator performed skip trace searches to attempt to locate an updated address and remail the notice. (*Id.,* ¶ 11.) In total, mailed Notice was delivered, without return, to 123,592 unique Class members including those who whose Email Notice was undeliverable. (*Id.,* ¶ ¶ 11, 12.)

In sum, the notice program actually engaged in was fair, adequate and appropriate. Rule 23(c)(2)(B) requires the class receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." It is not necessary that every Class Member receive actual notice to meet due process considerations, only that reasonable efforts be made to reach all class members. *Hill v. Street Corp.*, No. CIV.A. 09-12146-GAO, 2015 WL 127728 at *1 (D. Mass., Jan. 8, 2015) (*citing Silber v. Mabon,* 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).) Here, the notice program properly notified Class Members of the Settlement and their options and satisfied the requirements of due process.

## III. CAFA NOTICE HAS BEEN COMPLETED

The Settlement Administrator, on behalf of BPPR, filed a declaration establishing

compliance with settlement 28 U.S.C. § 1715 and Section 5.4 of the Settlement Agreement by sending a Notice of Proposed Class Action Settlement to all required federal and state officials. Notice Decl., ¶ 4. The Court should accordingly find that the Notice required by the Class Action Fairness Act was served timely and properly and is valid and effective.

## IV. BACKGROUND

### A. <u>Procedural History</u>

Plaintiff Soto filed a putative class action Complaint in the *Soto* Action on January 31, 2020, alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing and/or unjust enrichment, on his behalf and on behalf of persons similarly situated. The claims are based on BPPR's standardized checking account agreement drafted by BPPR. Plaintiff Soto alleged that in breach of certain contractual promises in BPPR's checking account agreement, BPPR assessed more than one non-sufficient funds ("NSF") fee or both NSF and overdraft ("OD") fees on the same "item" resubmitted for payment in connection with an ACH transaction.

BPPR moved to dismiss the complaint on April 10, 2020. The Court denied the Motion to Dismiss in part on March 31, 2021. BPPR moved for partial reconsideration of that order, and the Court denied that motion on March 7, 2022.

Plaintiff Soto served extensive written discovery after the motion to dismiss was first denied. Discovery was ongoing at the time the Parties agreed to a mediation in this case. BPPR produced, on a confidential basis and subject to the Stipulated Confidentiality Order issued at Docket No. 88 in the *Soto* Action, documents and a large quantity of transactional data regarding NSF and OD fees, which Plaintiffs' expert analyzed, as well as other documents and data.

Plaintiff Soto took a Rule 30(b)(6) corporate representative deposition and several more depositions were expected at the time of the mediation.

Plaintiffs Orama and Quiñones filed a separate complaint on March 2, 2022, in the District of Puerto Rico, also alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and/or unjust enrichment. Like Plaintiff Soto's complaint, Orama's and Quiñones' claims are based on BPPR's standardized checking account agreement drafted by BPPR. Plaintiffs alleged that, in breach of certain contractual promises in BPPR's checking account agreement, BPPR assessed more than one NSF fee or both an NSF and an OD fee on "items" resubmitted for payment in connection with an ACH and/or a paper check transaction.

Prior to beginning settlement discussions, Plaintiffs' expert undertook an extensive analysis of the transactional data produced by BPPR, in order to determine the estimated alleged damages at issue in this case. Only then, on April 5, 2022, did the Parties participate in a full-day mediation session with Hon. José Fusté (Ret.), in San Juan, Puerto Rico. The Parties reached an agreement in principle and signed a Term Sheet that day.

On April 28, 2022, the Parties filed a Notice of Settlement, confirming their agreement in principle and requesting that the Court stay all deadlines in the Actions. Since that time, the Parties have worked to document and execute a full Settlement Agreement, select a Settlement Administrator, and draft Class Notices.

### B. <u>Class Counsel's Investigation</u>

Class Counsel spent many hours investigating the claims of several potential plaintiffs against BPPR. Kaliel Decl., at ¶ 14. Class Counsel interviewed a number of BPPR customers to gather information about BPPR's disclosures and practices and their potential impact upon consumers, which was essential to counsel's ability to understand the nature of the potential claims and issues, the language of the account agreement and other documents at issue, and potential remedies. *Id*. at ¶ 15. Class Counsel expended significant resources researching and developing

the legal claims at issue. *Id*. at ¶ 16. They are familiar with the claims as they have litigated and resolved other bank fee claims with similar factual and legal issues in courts across the country. *Id*. at ¶ 17. Class Counsel has experience in understanding the damages at issue, the information critical to determine class membership, and the necessary data to calculate each Settlement Class Member's damages. The issues were heavily contested throughout the litigation. *Id*. at ¶ 18. Class Counsel, along with its data analysis expert, spent a significant amount of time analyzing data related to the assessment of the Class Fees at issue. *Id*. at ¶ 19. The Parties conferred regarding the calculations' accuracy. *Id*., ¶ 20. Prior to the mediation, Class Counsel and Plaintiffs' expert used this data to analyze the alleged damages at issue. *Id*., ¶ 21.

Consequently, Class Counsel mediated with Judge Fusté fully informed of the merits of Settlement Class Members' claims and negotiated the proposed Settlement while zealously advancing the position of Plaintiffs and Settlement Class Members and being fully prepared to continue to litigate rather than accept a settlement that was not in the best interest of Plaintiffs and the Settlement Class. *Id*. at ¶ 22. In sum, prior to negotiating the Settlement, Class Counsel spent significant time conferring with Plaintiffs, investigating facts, researching the law, preparing a well-pleaded complaint, engaging in discovery, working with an expert witness, and reviewing important documents and data. *Id*. at ¶ 23. This resulted in the Settlement for which Approval is respectfully requested.

## V. KEY TERMS OF THE PROPOSED SETTLEMENT

### A. <u>The Settlement Class.</u>

The Settlement Class is a Federal Rule of Civil Procedure 23(b)(3) opt-out class, defined as:

All holders of Accounts who during the Class Period paid and were not refunded an NSF and/or OD Fee in connection with an ACH or check transaction that was presented for payment more than once, in the following instances:

(1) for ACH transactions, if the ACH transaction was resubmitted by the merchant or the merchant's bank with a "RETRY" payment indicator after the initial request for payment was declined and it was either:

a) returned by BPPR again for insufficient funds resulting in a NSF fee; or,

b) paid by BPPR against insufficient funds resulting in an OD fee.

(2) for ACH transactions, if the ACH transaction is preceded by a returned ACH entry submitted by the same merchant in the same amount within the last ten calendar days, even if the merchant did not use the "RETRY" payment indicator.

(3) for paper check transactions, if the check was resubmitted for payment after the initial request for payment was declined and it was either:

a) returned by BPPR again for insufficient funds resulting in a NSF fee; or

b) paid by BPPR against insufficient funds resulting in an OD fee.

Excluded from the Settlement Class is Defendant, its parents, subsidiaries, affiliates, officers and directors, all Settlement Class members who make a timely election to opt-out, all judges assigned to this litigation and their immediate family members, and holders of accounts at a BPPR branch located in the British Virgin Islands who do not also have an account at a BPPR branch located in the United States.

Agreement at ¶ 3.1.

### B. Relief for the Benefit of the Settlement Class.

#### 1. Settlement Fund

The Settlement Fund is $5.5 million and will be used to pay: (a) Settlement Class Members their respective Settlement Class Member Payments out of the Net Settlement Fund; (b) Class Counsel for any Court awarded attorneys' fees and costs; (c) any Court awarded Service Awards for the Class Representatives; (d) Settlement Administration Costs; and (e) if funds remain after

the second distribution of the Net Settlement Fund to Settlement Class Members, to distribute to the *cy pres* recipient. Agreement at ¶ 6.6.

Settlement Class Members do not have to submit claims or take any other affirmative step to receive relief under the Settlement. Instead, as soon as practicable, but no later than 60 days following the Effective Date of the Settlement, BPPR and/or the Settlement Administrator will distribute the Net Settlement Fund to all Settlement Class Members. *Id.* at ¶ 6.6.2.

**2. Allocation of the Settlement Class Member Payments**

Payments from the Net Settlement Fund to the Settlement Class Members shall be calculated as follows:

> (Net Settlement Amount divided by the total number of Class Fees the Settlement Class Members collectively were assessed in connection with the transactions at issue);
>
> Multiplied by:
>
> Total number of Class Fees the Settlement Class Member was charged and paid in connection with the transactions at issue.

*Id.* at ¶ 7.1.

**3. Distribution of Settlement Class Member Payments**

Settlement Class Members who are Current Accountholders with BPPR when the Net Settlement Fund is distributed will receive a credit in the amount of their Settlement Class Member Payments applied to any account they are maintaining at the time of the credit. *Id.* at ¶ 6.6.2.3. If by the deadline to apply credits of Settlement Class Member Payments to accounts BPPR is unable to complete certain credit(s), BPPR shall deliver the total amount of such unsuccessful Settlement Class Member Payment credits to the Settlement Administrator to be paid by check in accordance with the procedure for Past Accountholders to receive payment. *Id.* at ¶ 6.6.2.4.

For Settlement Class Members who are Past Accountholders when the Net Settlement Fund is distributed or at that time do not have an account, they shall be sent a check by the Settlement Administrator at the address used to provide the Notice, or at such other address as designated by the Settlement Class Member. *Id.* For a jointly held Account of one or more Current Accountholders, payment will be made as described in Section 6.6.2.3 of the Settlement and may be deposited into an account of the primary Accountholder, whether or not such account is jointly held. *Id.* at ¶ 6.6.2.6. For a jointly held Account of a Past Accountholder, payment will be made by means of a check that will be payable to the primary Accountholder named on the Account, and mailed to the last known address for that primary Accountholder. *Id.* The Settlement Administrator will make reasonable efforts to locate the proper address for any check returned by the Postal Service as undeliverable and will re-mail it once to the updated address or, in the case of a jointly held account, and in the Settlement Administrator's discretion, to an accountholder other than the one listed first. *Id.* at ¶ 6.6.2.7. The Settlement Class Member shall have one-hundred eighty (180) days to cash the check. *Id.* at ¶ 6.6.2.5. After 240 calendar days from the Effective Date, any excess funds remaining from the Settlement Amount that have not been distributed in accordance with other provisions of the Settlement shall, if economically feasible, be distributed to the Settlement Class Members who successfully cashed checks or received their Settlement Class Member Payment as a credit. *Id.* at ¶ 6.7. The payment notices accompanying the Settlement checks for a second distribution shall notify the recipients that the checks must be cashed within 90 days from the date on the payment notice and that the enclosed check shall not be valid after that date. *Id.*

**4. Disposition of Residual Funds**

If a second distribution of remaining funds costs more than the amount to be distributed or is otherwise economically unfeasible, or if additional funds remain after a second distribution, Class Counsel shall petition the Court to distribute any remaining funds to a *cy pres* recipient agreed upon by the Parties and approved by the Court. *Id.* In no event shall any portion of the Settlement Fund revert to BPPR.

**C. <u>Releases.</u>**

In exchange for the benefits conferred by the Settlement, upon the Effective Date, the Releasing Parties (i.e., Class Representatives and each Settlement Class Member, and any Person claiming by or through the Class Representatives and each Settlement Class Member, including their respective past, present and future heirs, parents, affiliates, divisions, departments, trustees, shareholders, officers, directors, employees, administrators, managers, children, spouses, beneficiaries, predecessors, successors, conservators, executors, estates, administrators, assigns, assignees, attorneys, agents, consultants, and any other representatives of any of these Persons and entities or Persons purporting to act for them or on their behalf) fully and finally release and discharge the Released Parties (i.e., BPPR and each of its present, former, and future parents, predecessors, successors, assigns, assignees, affiliates, conservators, divisions, departments, subdivisions, owners, partners, principals, trustees, creditors, shareholders, joint ventures, coventurers, officers, and directors (whether acting in such capacity or individually), attorneys, vendors, accountants, nominees, agents (alleged, apparent, or actual), representatives, employees, managers, administrators, and each Person or entity acting or purporting to act for them or on their behalf) of and from the Released Claims (i.e., any individual, class, representative, group or collective claim, liability, right, demand, suit, matter, obligation, damage, loss, action or cause of action, of every kind and description whether arising under federal, state, common or foreign law,

that a Releasing Party has or may have asserted in the Actions, or that could have asserted or could assert, including claims that are actual, assigned, known or Unknown Claims, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, accrued or un-accrued, latent or patent, contingent or non-contingent, liquidated or un-liquidated, at law or in equity, matured or unmatured, apparent or unapparent, arising out of or relating in any way to the allegations, transactions, facts, matters, occurrences, representations or omissions involved, set forth, or referred to in the Actions or with regards to the Class Fees, in all cases including any and all claims for damages, injunctive relief, interest, attorney fees, and litigation expenses). This Release shall be included as part of any judgment, so that all released claims and rights shall be barred by principles of res judicata, collateral estoppel, and claim and issue preclusion and shall bind all Settlement Class Members and all the Releasing Parties, and all Released Claims shall be dismissed with prejudice and released as against the Released Parties. The Released Claims are released regardless of whether these claims are known or Unknown Claims, actual or contingent, liquidated, or unliquidated. *Id.* at ¶¶ 1.39, 13.1.

Accordingly, the Court should enter an order incorporating this Release into its judgment and permanently enjoining and barring the Releasing Parties from instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims against any Released Party.

## VI. THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT

### A. Standard for Judicial Approval of Class Action Settlements Under Federal Rules of Civil Procedure 23(e)

It is well established that courts favor the settlement of lawsuits over continued litigation. *See, e.g., Durrett v. Hous. Auth. of Providence*, 896 F.2d 600, 604 (1st Cir. 1990); *see also Hotel Holiday Inn de Isla Verde v. N.L.R.B.,* 723 F.2d 169, 173 n.1 (1st Cir. 1983) (citing the principle

that "settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits"). In particular, Courts especially welcome settlement in complex class actions. *See Officers for Just. v. Civ. Serv. Comm'n of City & City of San Francisco*, 688 F.2d 615.625 (9th Cir. 1982).

Before granting final approval of a proposed class action settlement, the Court must find that the settlement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e); *Voss v. Patrick*, 592 F.3d 242, 251 (1st Cir. 2010). Courts "enjoy great discretion to 'balance [a settlement's] benefits and costs' and apply this general standard." *Id.* (citation omitted). "[T]he ultimate decision by the judge [in approving a settlement] involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009).

Among the factors traditionally considered in evaluating the fairness of a class action settlement are the following: (i) whether the settlement negotiations were at arm's length; (ii) the stage of the litigation and the amount of discovery completed; (iii) the amount of the settlement compared to the amount at issue in the case; (iv) plaintiff's likelihood of succeeding on the merits and recovering damages on the claims; (v) class counsel's recommendations; and (vi) the nature and merit of any objections. *See, e.g., In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822-23 (D. Mass. 1987). In this instant Action, an examination of the foregoing factors demonstrates that the proposed Settlement is indeed fair, reasonable and adequate to the Settlement Class, and thus should be approved by the Court.

**B. The Parties' Negotiations Were Adversarial and at Arm's Length**

The "involvement of a neutral or court-affiliated mediator or facilitator in [the settlement] negotiations" tends to indicate that settlement negotiations were conducted at arms-length and resulted in a fair, reasonable and adequate recovery for class members. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment.

Here, Counsel for the Parties have separately initiated preliminary reviews of the applicable law and facts pertaining to the alleged claims, potential defenses thereto, and the damages claimed therein. Further, the Parties engaged in an arms-length mediation with the Hon. José Fusté (Ret.) in person in San Juan, which resulted in the Settlement. The resulting proposed Settlement Agreement is the product of hours of such arm's length negotiations between the Parties. Accordingly, these factors weigh in favor of approval of the Settlement.

**C. Plaintiffs' Research and Analysis, along with Discovery Exchanged by the Parties, Support Final Approval of the Settlement**

The reasonableness of a class action settlement is presumed where "the parties negotiated at arm's length and conducted sufficient discovery." *Robinson v. Nat'l Student Clearinghouse,* 14 F.4th 56, 59 (1st Cir. 2021). Here, Class Counsel spent many hours investigating the claims of several potential plaintiffs against BPPR. Kaliel Decl., at ¶ 14. Class Counsel interviewed a number of BPPR customers to gather information about BPPR's disclosures and practices and their potential impact upon consumers, which was essential to counsel's ability to understand the nature of the potential claims and issues, the language of the account agreement and other documents at issue, and potential remedies. *Id*. at ¶ 15. Class Counsel expended significant resources researching and developing the legal claims at issue. *Id*. at ¶ 16. They are familiar with the claims as they have litigated and resolved other bank fee claims with similar factual and legal issues in courts across the country. *Id*. at ¶ 17. Class Counsel has experience in understanding the damages at issue, the information critical to determine class membership, and the necessary data

to calculate each Settlement Class Member's damages. *Id*. at ¶ 18. The issues were heavily contested throughout the litigation. *Id*. Class Counsel, along with its data analysis expert, spent a significant amount of time analyzing data related to the assessment of the Class Fees at issue. *Id*. at ¶ 28. The Parties conferred regarding the calculations' accuracy. *Id*., at ¶ 19. Prior to the mediation, Class Counsel and Plaintiffs' expert used this data to analyze the alleged damages at issue. *Id*. at ¶ 21.

Consequently, Class Counsel mediated with Judge Fusté fully informed of the merits of Settlement Class Members' claims and negotiated the proposed Settlement while zealously advancing the position of Plaintiffs and Settlement Class Members and being fully prepared to continue to litigate rather than accept a settlement that was not in the best interest of Plaintiffs and the Settlement Class. *Id*. at ¶ 22. In sum, prior to negotiating the Settlement, Class Counsel spent significant time conferring with Plaintiffs, investigating facts, researching the law, preparing a well-pleaded complaint, engaging in discovery, working with an expert witness, and reviewing important documents and data. *Id*. at ¶ 23.

Accordingly, Plaintiffs were able to conduct sufficient discovery in this action prior to reaching a settlement of their claims and had substantial factual basis upon which to predicate their position going into the settlement negotiations.

**D. The Settlement Represents an Excellent Recovery for the Settlement Class**

The relief offered in a settlement is assessed as a whole "complete package" for overall fairness. *Nat'l Rural Telecomunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (*quoting Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Simonet v. Glaxosmithkline*, No. CIV. 06-1230 GAG/CVR, 2009 WL 2912482 at *2 (D.P.R. Sept 4, 2009); *In re Volkswagen and Audi Warranty Extension Litigation*, 784 F. Supp. 2d 35, (D.

Mass 2011) (finding that "the measurement should not be what benefits are claimed by the class but rather what benefits are made available by counsel to be claimed"), *vacated and remanded on other grounds*, 692 F.3d 4 (1st Cir. 2012). Indeed, it is "well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (*citing Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242); *see also Bezdek v. Vibram USA Inc.*, 79 F.Supp.3d 324, 342 (D. Mass.), aff'd, 809 F.3d 78 (1st Cir. 2015) (finding fair, reasonable and adequate a settlement which provided class members with a recovery "notably less than the theoretical maximum potential relief available at trial").

Here, the dispute centers on BPPR's allegedly improper assessment of certain OD and NSF Fees–claims BPPR forcefully denied throughout the litigation of the Actions. With this Settlement, Plaintiffs have achieved their desired goal of compensating Settlement Class Members charged such fees during the Class Period. While Plaintiffs' best-case scenario is a 100% refund of the Retry NSF Fees, there was a substantial risk that Plaintiffs would not achieve such a result. BPPR would have sought summary judgment in its favor after discovery closed. Success on the merits was not certain. BPPR contends that the relevant Account agreements are unambiguous, and even if they were, the extrinsic evidence resolves the ambiguity in its favor on whether the fees at issue are permitted. Thus, although Plaintiffs believe they have a strong chance on the merits, Plaintiffs might not certify the classes or would lose at summary judgment or trial, or on appeal. Kaliel Decl., at ¶ 24.

For these reasons, a Settlement Fund that represents approximately 45% of the Class Fees allegedly wrongly charged to Settlement Class Members, as this Settlement does—and without the inherent litigation risks—is a very fair and reasonable recovery. *Id*. at ¶ 25.

This Settlement either meets or exceeds the vast majority of court-approved recoveries in overdraft fee class actions nationwide. *See, e.g., Roberts v. Capital One*, 16 Civ. 4841 (LGS), Dkt. 198 (S.D.N.Y. Dec. 1, 2020) (approving cash fund of approximately 34% of the most likely recoverable damages for class members); *Bodnar v. Bank of Am., N.A.*, No. 14-3224, 2016 U.S. Dist. LEXIS 121506, at *12 (E.D. Pa. Aug. 4, 2016) (approving a cash fund of between 13%-48% of the maximum amount of damages they may have been able to secure at trial, and describing such a result as a "significant achievement" and outstanding"); *In re Checking Account Overdraft Litig.*, No. l:09-MD-02036-JLK, 2015 U.S. Dist. LEXIS 193690, at *37 (S.D. Fla. May 22, 2015) (approving $31,767,200 settlement representing approximately 35% of the most probable aggregate damages); *Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST, 2015 U.S. Dist. LEXIS 56370, at *9 (N.D. Cal. Apr. 28, 2015) (approving $2,900,000 settlement for approximately 38% of what could have been obtained at trial); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190562, at *3-4 (S.D. Fla. Aug. 2, 2013) (approving $4,000,000 settlement for 25% of the most probable recoverable damages); *Mosser v. TD Bank, N.A.*, No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 187627, at *83-84 (S.D. Fla. Mar. 18, 2013) (approving $62,000,000 settlement for 42% of the most probable damages and praising it as an "outstanding result").

In light of the risks, costs, and delays that would result from proceeding to trial and appeal of any trial verdict, as further discussed below, the Settlement provides for (and has provided for) a reasonable recovery for the members of the Settlement Class. While a higher reward for Class Members may be theoretically possible at trial, the nature of a Settlement is a "compromise, a yielding of the highest hopes in exchange for certainty and resolution…and the benefit to both parties is that they will avoid the outcome embodying their worst nightmares…no damages award

at all." *Bezdek*, 79 F.Supp.3d at 346. Here, while the Settlement may provide Class Members with "something less favorable than the best outcome," it will guarantee Class members recovery "potentially on par with a likely outcome…and something more favorable than the worst outcome." *Id.*, *see also In re Celexca & Lexapro Mktg. & Sales Practices Litig.*, No. 09-civ-2067, 2014 WL 4446464 at *7 (D. Mass. Sept. 8, 2014) ("A settlement need not reimburse 100% of the estimated damages to class members in order to be fair"). Accordingly, this factor weighs in favor of approval of the Settlement.

**E. The Risk, Expense, Complexity and Likely Duration of Further Litigation**

In assessing this factor, a Court should "consider the legal obstacles to establishing liability or damages." *Rivero Souss v. Banco Santander S.A.*, No. CV 09-2305 (FAB), 2011 WL 13350165 at *8 (D.P.R., June 9, 2011) (citing *Bussie v. Allmerica Fin. Corp.*, 50 F.Supp.2d 59, 76 (D. Mass 1999) ("the reality that the Class would encounter significant, and potentially insurmountable, obstacles to a litigated recovery underscores the reasonableness of the compromise set forth in the Settlement Agreement.") Indeed, this factor "weighs heavily in favor of final approval" where, as here, continued litigation is assured to be "an expensive, complex and time-consuming process" and there are "serious questions of law and fact that render[ed] the ultimate outcome of [the] litigation uncertain and unpredictable." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72-73 (D. Mass. 2005); *see also Bezdek v. Vibram, USA Inc.*, 79 F.Supp.3d 324, 344-45 (D. Mass. 2015) (finding that this factor weighs in favor of settlement for the same reasons), aff'd 809 F.3d 78 (1st Cir. 2015).

Here, the risk and expense of continued litigation is apparent: absent approval of the Settlement, the Parties would be required to continue litigation, which necessarily would involve extensive discovery, expensive expert reports, and a motion for class certification which Defendant

would surely contest. Other highly foreseeable motions would be a motion for summary judgment and potential appeals. Such proceedings would be costly, prolong this Action for several more years, and decrease the net benefit of any damages award obtained at trial, all without providing any degree of certainty that the Class would end up with a recovery of greater or even equivalent value to the proposed Settlement. In fact, it may even be less. Accordingly, this factor weighs heavily in favor of approval. *See, e.g., Relafen,* 231 F.R.D. at 72-73; *Bezdek*, 79 F. Supp. at 345 (finding that this factor weighs in favor of settlement where plaintiffs "identified meaningful concerns with class certification," and that both parties would need to "conduct further discovery, including extensive expert discovery, followed by very likely a motion for summary judgment and renewed settlement discussions.").

**F. Plaintiffs' Likelihood of Succeeding on the Merits**

In applying this factor, courts will "judge the fairness of the proposed compromise by evaluating the probable outcome of the litigation and the terms of the settlement and by weighing the remedies the class could secure from it against the probable costs and results of continued litigation." *Simonet,* 2009 WL 2912482 at *1 (citing *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). "In doing so, however, the court is not to decide the merits of the case or resolve unsettled legal questions." *Id.* Finally, courts will find this factor in favor of a settlement where "there is an issue as to what proof, if any, can be offered by the members of the class to prove their damages," which would make "recovery by the class members particularly difficult." *Id.*

While Plaintiffs and their counsel naturally believe that there is evidence from which the Court could rule in favor of Plaintiffs' claims given further litigation, substantial hurdles for Plaintiffs to prove their case are evident. Of course, the risk and expense of continued litigation is

obvious; absent settlement, the Parties would be required to continue litigation separately in each of the Actions, which necessarily would involve significant discovery, motions for certification which BPPR would surely contest, and other dispositive motions such as motions for summary judgment and possible appeals. Once all is said and done, the ultimate recovery might be of no greater value – or of lesser value – to that in the proposed Settlement Agreement. Moreover, the process only becomes more complex over a longer period of time, as new issues emerge, for example, through discovery or simply determinations relating to case strategy. Accordingly, this factor weighs in favor of final approval of the Settlement. *Bezdek*, 79 F.Supp at 345 (finding this factor favors settlement where plaintiffs "ha[d] some ,but not an entire, likelihood of success on the merits," including prospective issues with proving their damages theory at trial).

### G. Views and Experience of Plaintiffs' Counsel, and Counsel's Adequate Representation of the Class

In approving class action settlements, courts give great weight to the opinion and judgment of experienced counsel who have conducted arm's-length negotiations. "When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight." *Hill v. State Corp.*, No. CIV.A.09-12146-GAO, 2015 WL 127728 at *7 (D. Mass., Jan. 8, 2015) (citing *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000).

Class Counsel has extensive experience in litigating consumer and financial services class actions. Here, Class Counsel devoted substantial time and resources investigating, litigating, and resolving the Actions. Plaintiffs settled the Actions with the benefit of Class Counsel's years of experience litigating cases like this one, discovery, and data and damage analysis. Kaliel Decl., ¶ 26. Due to their extensive experience, the Parties' counsel are well aware of the relative strengths and weaknesses of their respective cases, informing the negotiations between counsel. Class

Counsel's analysis allowed them to confidently evaluate Plaintiffs' claims' strengths and weaknesses, the prospects for success at class certification and trial, and the merits of claims and defenses, the risks attendant to continued litigation, and the benefits of settling. Accordingly, this factor weighs heavily in favor of final approval of the Settlement.

### H. The Favorable Reaction and Lack of Objection by the Settlement Class Supports Approval

The highly favorable reaction of the members to the Settlement Class supports its approval. *See Simonet,* 2009 WL 2912482 at *9-10 (approving settlement in light of, among other things, "the overwhelming, nearly unanimous support for the settlement demonstrated by the absence of any other objections, and the small number of exclusion requests.") As discussed above, no objections to the Settlement or Plaintiffs' Counsel's application of an award for attorneys' fees and expenses have been filed with the Court or served on Plaintiffs' Counsel. Further, no Class Members have submitted requests for exclusion from the Settlement. The Settlement Class Members have overwhelmingly had a favorable reaction to the proposed Settlement. Accordingly, this factor weighs in favor of final approval of the Settlement.

## VII. FINAL CLASS CERTIFICATION FOR PURPOSES OF THE PROPOSED SETTLEMENT IS APPROPRIATE

In the Court's Preliminary Approval Order, the Court preliminary certified the following class for settlement purposes:

> All holders of Accounts who during the Class Period paid and were not refunded an NSF and/or OD Fee in connection with an ACH or check transaction that was presented for payment more than once, in the following instances:
>
> (1) for ACH transactions, if the ACH transaction was resubmitted by the merchant or the merchant's bank with a "RETRY" payment indicator after the initial request for payment was declined <u>and</u> it was either:
>
> a) returned by BPPR again for insufficient funds resulting in a NSF fee; or,

b) paid by BPPR against insufficient funds resulting in an OD fee.

(2) for ACH transactions, if the ACH transaction is preceded by a returned ACH entry submitted by the same merchant in the same amount within the last ten calendar days, even if the merchant did not use the "RETRY" payment indicator.

(3) for paper check transactions, if the check was resubmitted for payment after the initial request for payment was declined and it was either:

a) returned by BPPR again for insufficient funds resulting in a NSF fee; or

b) paid by BPPR against insufficient funds resulting in an OD fee.

> Excluded from the Settlement Class is Defendant, its parents, subsidiaries, affiliates, officers and directors, all Settlement Class members who make a timely election to opt-out, all judges assigned to this litigation and their immediate family members, and holders of accounts at a BPPR branch located in the British Virgin Islands who do not also have an account at a BPPR branch located in the United States.

For the reasons previously explained by the Court, final certification of the same class for settlement purposes is now warranted.

## VIII. THE COURT SHOULD APPROVE SERVICE AWARDS FOR THE CLASS REPRESENTATIVES

"Because a named Plaintiff is an essential ingredient in any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit." *In re Puerto Rican Cabotage Antitrust Litigation*, 815 F.Supp.2d 448, 468 (D.P.R. 2011) (citing *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F.Supp.2d 184, 189 (D. Me. 2003)); *see also Carlson v. Target Enterprise, Inc.*, 447 F.Supp.3d 1, 7 (D. Mass. 2020) ("Incentive awards are an appropriate means for encouraging individuals to undertake the responsibility of representative lawsuits."). Indeed, Courts "routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Id.*

Plaintiffs' request a Service Award of $10,000.00 for each of the Class Representatives. Agreement at ¶ 11. The Service Awards will be paid from the Settlement Fund and will be in addition to the Settlement Class Member Payments each Class Representative will be entitled to receive under the Settlement. *Id.* The awards will compensate the Class Representatives for their time and effort and for the risks they assumed in prosecuting the Actions. *Id*. Specifically, Plaintiffs provided assistance that enabled Class Counsel to successfully prosecute the Actions and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding documents and information to Class Counsel; (3) participating in conferences with Class Counsel; and (4) reviewing the settlement documentation. Kaliel Decl., ¶ 27. In so doing, the Plaintiffs were integral to the case. *Id*. This payment is intended to recognize the Class Representatives' substantial effort and risks in assisting with the prosecution of this action on behalf of the Class.

Without the effort and risks taken by the Class Representatives, Class Members likely would not have received any of the benefits provided for in the Settlement. *Id*. at ¶ 28. In sum, this class action would not have been possible without the aid of the Class Representatives, who put their own time and effort into the litigation, sacrificed the value of each of their own individual claims, and placed themselves at risk for the sake of the other Class Members. The requested incentive award of $10,000 to each of the Class Representatives is therefore reasonable to compensate them for their active participation in this lawsuit.

## IX. THE REQUESTED FEE AWARD IS FAIR AND REASONABLE

### A. Class Counsel's Fees Should be Calculated Under the Percentage of Fund Method

Courts have long recognized that where, as here, a common benefit is conferred onto a Class, Plaintiffs' counsel are entitled to attorneys' fees. *See In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire*, 56 F.3d 295, 311 (1st Cir. 1995) (holding that class counsel

"labored as representative counsel conferred a common benefit, and must be compensated accordingly."). In such cases, the utilization of the "percentage-of-fund method…is the prevailing praxis." *Id.* at 307. In particular, the First Circuit has noted that the percentage-of-funds method is the "prevailing practice" and provides "distinct advantages over the lodestar approach." *See Nilsen v. York County*, 400 F.Supp.2d 266, 270-71 (D. Me 2005); *see also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 78 (D. Mass. 2005) (finding that, in complex litigation and common fund cases, the percentage of fund approach is "often less burdensome to administer" and its use "enhances efficiency.") (internal citations omitted). Further, the percentage-of-fund method is commonly used to calculate attorneys' fees in contingency fee cases such as this one. *See* 5 Newberg on Class Actions §15:62 (5th ed. 2018).

### B. Class Counsel's Fees are Reasonable Under the Percentage of Fund Method

In selecting an appropriate percentage award, both the Supreme Court and the First Circuit have recognized that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *Missouri v. Jenkin*s, 491 U.S. 274, 285 (1989); *Thirteen Appeals*, 56 F.3d at 307. Courts in this Circuit frequently award attorneys' fees of approximately thirty percent of the settlement fund in class actions. *See, e.g., Thirteen Appeals,* 56 F.3d at 307 (approving fee award of approximately 31%); *Hoff v. Popular Inc*., No. 3:09-CV-01428-GAG, 2011 WL 13209610 at *2 (D.P.R., Nov. 2, 2011) (awarding 27% of the settlement); *Relafen,* 231 F.R.D. at 82 (awarding 33.33% of the settlement); *Deckler v. Ionics, Inc., et al.*, No. 03-CV-10393-WGY, slip op. (D. Mass. Apr. 4, 2005)(awarding 30% of the settlement); *In re Segue Software, Inc. Sec. Litig.*, No. 99-10891-RGS, slip op. (D. Mass. July 31, 2001) (awarding 33% of the settlement); *Wilensky, et al. v. Digital Equip. Co., et al.*, No. 94-10752-JLT (D. Mass. July 11, 2001)(awarding 33.33% of the settlement).

Here, Plaintiffs seek an award of $1,815,000 under the percentage of fund method, which represents 33% of the $5.5 million amount of the Settlement Fund. Plaintiffs' request is reasonable, their requested percentage is well within the range typically granted in this Circuit.

Plaintiffs' request is also reasonable because it falls well within the range of the fees awarded by other Courts in comparable bank fee class actions. Courts regularly award fees in excess of 30% when awarding attorneys' fees in similar financial services class action settlements. The following depicts these settlements nationwide, all of which resulted in fee awards at or above the 33.33% that Class Counsel requests here:

| **Bank Fee Case Name** | **Percentage of the Fund Awarded** |
|---|---|
| *Lopez v. JPMorgan Chase Bank, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **44%** of value of settlement, which includes 30% of $110 million cash fund and 30% of value of practice changes |
| *Jacobs v. Huntington Bancshares Inc.* No. 11-cv-000090 (Lake County Ohio) | **40%** of value of settlement, which includes 40% of $8.975 million and 40% of $7 Million in debt forgiveness |
| *Farrell v. Bank of Am., N.A.,* 327 F.R.D. 422 (S.D. Cal. 2018), *aff'd sub nom. Farrell v. Bank of Am. Corp., N.A.,* 827 F. App'x 628 (9th Cir. 2020) | **40%** of 37.5 million common fund |
| *Wolfgeher v. Commerce Bank, N.A.,* No. 1:09-MD-02036-JLK (S.D. Fla.) (Dkt. 3574), | **38%** of $18.3 million common fund |
| *Nelson v. Rabobank, N.A.*, No. RIC 1101391 (Cal. Supr.) | **35.2%** ($750k fee includes % of practice changes) |
| *In re Checking Account Overdraft Litig.,* No. 1:09-MD-02036-JLK, 2020 U.S. Dist. LEXIS 142012 (S.D. Fla. Aug. 10, 2020) | **35%** of $7.5 million |
| *Molina v. Intrust Bank, N.A.*, No. 10-CV-3686 (Dist. Ct. Ks.) | **33%** of $2.7 million |
| *Hawkins et al v. First Tenn. Bank, N.A.* (Cir. Ct. Tenn.) | **35%** of $16.75 million |
| *Swift v BancorpSouth*, No. 1:10-cv-00090-GRJ (N.D. Fla.) | **35%** of $24 million |
| *Casto v. City National Bank, N.A.*, No. 10-C-1089 (Cir. Ct. W.Va.) | **33.33%** of $3 million |
| *Schulte v. Fifth Third Bank*, No. 09-cv-6655 (N.D. Ill.) | **33.33%** of $9.5 million |

| | |
|---|---|
| *Johnson v. NBT Bank, N.A.*, No. 12-cv-01405-RDM (M.D. Pa.) | **33.33%** of $2.5 million |
| *Bodnar v. Bank of America*, No. 5:14-cv-03224-EGS (E.D. Pa.) | **33.33%** of $27 million |
| *Holt v. Community America Credit Union, No.* 4:19-CV-00629-FJG (W.D. Mo.) | **33.33%** of 3.078 million |
| *White v. Members 1st Federal Credit Union,* Case No. 1:19-cv-00556-JEJ (W.D. Pa.) | **33.33%** of $910,000 |
| *Figueroa v. Capital One*, Case No. 3:18-cv-00692-JM-BGS (S.D. Cal.) | **33.33%** of $13 million |
| *Liggio v. Apple Federal Credit Union,* No. 1:18-cv-01059-LO-MSN (E.D. Va.) | **33.33%** of $2.7 million |
| *Lambert v. Navy Fed. Credit Union*, No. 1:19-cv-103-LO-MSN, 2019 U.S. Dist. LEXIS 138592, at *3 (E.D. Va.) | **33.33%** of $16 million |

As the requested fee is clearly in line with other similar overdraft litigation around the nation that settled for a similar amount, the fee requested is reasonable.

### C. The Relevant Factors Support Class Counsels' Fee Request

The First Circuit has enumerated a variety of factors to consider in determining the reasonableness of attorney's fees. Among these factors include, *inter alia*: (1) the result obtained, (2) the time and labor devoted to the case by counsel, (3) the skill, experience, reputation and ability of the attorneys involved, (4) the contingent nature of the fee and risk of non-payment (5) a consideration of comparable settlements and (6) the reaction of the class members. *See, e.g., Relafen,* 231 F.R.D. at 84; *Bezdek v. Vibram USA Inc.*, 79 F.Supp.3d 324, 343-44 (D. Mass. 2015), aff'd 809 F.3d 78 (1st Cir. 2015); *Zurich v. American Ins. V. Lord Elec. Co. of Puerto Rico*, No. CIV.09-1111 SEC, 2014 WL 710116 at n.1 (D.P.R., Feb. 25, 2014). The fees sought by Class Counsel here are reasonable and appropriate upon an analysis of these above factors.

#### *1. The Result Obtained*

One of the primary factors Court look to in deciding the reasonableness of the fee request are the results obtained. *See In re Puerto Rican Cabotage Antitrust Litigation,* 815 F.Supp.2d 448, 458 (D.P.R. 2011) ("Analyzing the net dollars and cents results achieved by counsel for their clients is often the most influential factor in assessing the reasonableness of any attorney's fee award.")(*citing Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (stating that the "most critical factor is the degree of success obtained.").

Here, the result obtained by Class Counsel supports the reasonableness of the fee request, since the Settlement makes available the substantial benefits to Settlement Class Members described above – resulting in a recovery of 45% of the best-case damages, plus an improvement to the Bank's relevant disclosures and ceasing the "retry" fee assessment practice at the heart of this case for a period of at least five years. Considering the extensive difficulties that Plaintiffs and Class Counsel would have faced prosecuting this action going forward, particularly in proving their damages, this Settlement presents a tremendous recovery for Settlement Class Members and is an excellent result.

*2. The Time and Labor Devoted to the Case by Class Counsel*

Generally, Courts will find the hours an attorney spends on a case reasonable if they were "reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client." *Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983). In considering the above, a Court "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

This settlement is the product of approximately three years of complex and active litigation by Class Counsel and was entered into by Plaintiffs and Class Counsel with full knowledge of the

facts and circumstances underlying Plaintiffs' claims, and the strengths and weaknesses of those claims.

The settlement was only reached after Class Counsel conducted an extensive factual investigation and legal analysis, contested and defeated a potentially case-dispositive motion to dismiss, and conducted discovery. Kaliel Decl. at ¶ 29. In sum, Class Counsel were required to spend, and have expended a significant amount of time investigating, litigating and successfully settling these claims to achieve an excellent result on behalf of the Class. To date, Class Counsel have collectively spent approximately 1,086.50 hours litigating this case. *Id*. at ¶ 30. In the event that the Court grants final settlement approval, Class Counsel will need to spend substantial additional time monitoring administration of the settlement after final approval. *Id.*

Class Counsel assessed the length of time that would likely be necessary to prosecute this action through trial, post-trial motions, and likely appeals, taking into consideration the significant uncertainties in predicting the outcome of this action and the delay in recovery which would likely occur, prior to conducting the mediation which resulted in the settlement. All settlement negotiations were conducted at arm's-length and were adversarial and non-collusive. This settlement is the product of three years of complex, active litigation conducted by Class Counsel, and as such this factor favors the reasonableness of their fee request.

*3. The Skill, Experience, Reputation and Ability of Class Counsel*

Courts also consider the skill, experience, reputation and ability of the counsel in evaluating a fee request. "It is well accepted that a case requiring specialized abilities may, and often does, warrant higher attorney rates." *Arkansas Teacher Retirement Sys. v. State Street Bank and Trust Co.*, No. 11-CV-10230-MLW, 2018 WL 11026335 at *67 (D. Mass., June 28, 2018) (citing *Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir. 1983). In particular, the prosecution

of complex class actions "require unique legal skills and abilities as well as substantial resources." *Id.*

Because of the continuously developing law around the theory of liability and the uncertainty that existed throughout the litigation, Class Counsel needed a high degree of skill, both to settle the matter and to be prepared to litigate the threshold legal issue through appeal. Class Counsel's experience handling the most prominent bank fee cases and their fulsome understanding of the related legal issues helped them successfully advance this case and procure a beneficial result for the Classes. The complex nature of this case warrants approval of the requested fee award.

There are few if any firms in the nation with the expertise of Class Counsel in these types of bank fee cases. Kaliel Decl., ¶ 31. Class Counsel leveraged that expertise to litigate this case and negotiate a favorable settlement for the Settlement Class. *Id*. at ¶ 33. Counsel was armed with extensive experience litigating similar overdraft fee and other class action cases, *see generally* Kaliel Decl*.*, Exhibit A*,* having been named lead counsel in numerous cases challenging the processing and fee assessment practices of financial institutions, non-bank lenders, and others. *Id*. at ¶ 32. Here, Class Counsel's combined expertise allowed it to build a novel case that has not been attempted in Puerto Rico before. *Id*. at ¶ 33. Only because Class Counsel has litigated many complex consumer cases involving financial services and debit cards, including working extensively with experts to uncover the methodologies behind the assessment of fees, were they able to successfully litigate and settle this matter. *Id*. at ¶ 34. To even be able to identify the alleged inappropriate fees requires specialized knowledge and skill, as do the theories surrounding the alleged fees, not to mention the specialized knowledge of class action procedure required to achieve certification, let alone settlement.

Here, Class Counsel's collective wisdom was to make every reasonable effort to achieve a settlement taking into account the risks that they faced ahead, while extracting as much value out of the settlement.

*4. The Contingent Nature of the Fee and Risk of Non-Payment*

Courts have consistently recognized that another important factor in evaluating an application for fees is the contingent nature of counsel's engagement and the risks of non-payment for their work performed. See, e.g., *Relafen* 231 F.R.D. at 81; *Bezdek*, 79 F.Supp.3d at 344-45; *Hill v. State Street Corp.*, No. CIV.A.09-12146-GAO, 2015 WL 127728 at *9 (D. Mass., Jan. 8, 2015).

Class Counsel undertook to represent Plaintiffs and the Class in this litigation on a contingent basis, with the expectation that they would have to devote many hours of hard work involving difficult and novel issues of fact and law, without any assurance of recompense for their labor or even reimbursement for their out-of-pocket expenses. Kaliel Decl. at ¶ 35. Class Counsel assumed the difficult tasks of analyzing complex documents, performing necessary legal research, preparing briefs, consulting experts and conducting vigorous negotiations to produce the result before the Court. *Id*. The risk undertaken by Class Counsel was significant, as the inherent risks of contingent fee arrangements are very real and manifest regularly. Further, in choosing to prosecute this action, Class Counsel were precluded from focusing on, or taking on, other cases which could have resulted in a larger, less risky, monetary gain. *Id*. at ¶ 36. Accordingly, this factor favors the reasonability of Class Counsel's fee request.

*5. The Positive Reaction of the Settlement Class*

Courts have found that the near absence of objections from a settlement class to a request for attorney's fees supports the fairness and reasonableness of the request. *See, e.g., Rivero Souss*

*v. Banco Santander S.A.,* No. CV 09-2305 (FAB), 2011 WL 13350165 at *13 (D.P.R. June 9, 2011) (approving class counsel's request for attorney's fees reasonable where "only one Class member (out of more than 2000)" objected to the settlement); *Relafen,* 231 F.R.D. at 86 (approving class counsel's request for attorney's fees despite four objections); *In re Prograf Antitrust Litigation*, No. 1:11-MD-02242-RWZ, 2015 WL 13908415 at *5 (D. Mass., May 20, 2015) (finding class counsel's request for attorney's fees reasonable in part because there were no objections by class members).

Here, every notice disseminated to Settlement Class Members stated that the Settlement would include a request for attorney's fees and costs in the amount of 33% of the Settlement Fund. To this date, not a single objection has been received. This factor weighs heavily in favor as to the reasonability of Class Counsel's fee request.[1]

## X. CLASS COUNSEL SHOULD BE REIMBURSED FOR THEIR REASONABLY INCURRED LITIGATION EXPENSES

[1] While the First Circuit does not require a court to cross check a percentage of fund request against a lodestar in determining of the reasonableness of a requested fee, a lodestar cross-check can provide a useful perspective on the reasonableness of a given percentage award. *See Thirteen Appeals,* 56 F.3d at 307; *Relafen,* 231 F.R.D. at 81; Manual for Complex Litigation §14.122 ("The lodestar is…useful as a cross-check on the percentage method."). Such a cross check strongly supports the fee request here.

Class Counsel have collectively expended a total in excess of 1,086.50 hours prosecuting this action, resulting in a lodestar of $738,235.50. Kaliel Decl. at ¶ 37. This lodestar requires only a reasonable enhancement (multiplier) of approximately 2.4 to equate with the fee requested by Plaintiffs' counsel. *Id.* This multiplier is comparable to or significantly less than the multipliers recognized by courts as reasonable for compensating plaintiffs' counsel for the contingency risk they have taken on to represent a class. *See, e.g., In re Veritas Software Corp. Sec. Litig.,* No. C-03-0283 MMC, 2005 WL 3096079, at *19 (N.D. Cal. Nov. 15, 2005) (applying a 4.0 multiplier where "the case ha[d] not progressed beyond motions to dismiss," and "no formal discovery ha[d] been taken to date."); *Hoff*, 2011 WL 13209610 at *2 (finding reasonable a percentage of fund reward equivalent to a 3.13 lodestar multiplier); *In re Tyco Intern., Ltd. Multidistrict Litig.*, 535 F.Supp.3d 249, 271 (D.N.H. 2007) (finding a multiplier of 2.697 was appropriate, and even noting that it was relatively low); *In re CVS Corp. Sec. Litig.*, No. 01-11464-JLT, slip op. at 7 (D. Mass. Sept. 7, 2005) (awarding attorneys' fees with a 3.27 multiplier).

Class Counsel have incurred litigation expenses of approximately $48,200.29 in prosecuting this action. Kaliel Decl. at ¶ 39. These expenses were reasonable and necessary to the representation of the Class. *See In re Nineteen Appeals Arising Out of the San Juan Dupoint Plaza Hotel Fire Litig.*, 982 F.2d 603, 606 (1st Cir. 1992). An accounting of the aggregate expenses incurred by each of Class Counsel's firms by category are included in the attached Declaration. As that information reveals, the majority of the expenses incurred were to pay for the services of Judge Fusté, the mediator, to pay for the services of a well-qualified damages expert, travel, and filing fees. *See* Kaliel Decl. at ¶ 40. Accordingly, Plaintiffs' request for an award of costs is reasonable.

As noted above, the notices sent to and made available for the Settlement Class Members informed them that the Settlement would provide for a request for attorney's fees and costs. No Settlement Class Member has raised an objection to such a request. Accordingly, Class Counsel respectfully submit that the Court should award the expenses requested.

## XI. CONCLUSION

For the foregoing reasons, the Court should finally approve the Class Action Settlement and grant Plaintiffs' request that the Court award attorney's fees, attorney's fees and costs, and Class Representative Service Awards from the Settlement Fund. Furthermore, the Court should dismiss these cases with prejudice and, except as detailed herein, without award of costs.

Dated: January 30, 2023

Respectfully Submitted,

/s/ *David C. Indiano*
David C. Indiano USDC Bar No. 200601
**INDIANO & WILLIAMS, P.S.C.**

*Attorneys for Plaintiffs and the proposed class*